times in the head, chest, and neck); Commonwealth v.
Fryar, 425 Mass. 237, 248, 680 N.E.2d 901 (1997)(stabbing
in the chest); Commonwealth v. Morgan, 422 Mass. 373,
382, 633 N.E.2d 247 (1996)(stabbing with a knife having
a six-inch blade). See Cf. Commonwealth v. Johnson,
435 Mass. 113, 122, 745 N.E.2d 685 (2001)(in gunshot case
in which three people were shot and one died,the errant
third-prong malice charge "relieved the Commonwealth of
its burden to prove deliberate premeditation beyond a
reasonable doubt").

It is anticipated that the Commonwealth will argue
that no risk of a fundamental miscarriage of justice
would flow from an erroneous malice instruction because
Mr. Gaskins was prosecuted under a felony murder theory
as well.  However, the felony murder charge had its own
infirmities.

In his direct appeal to the Supreme Judicial Court
Mr. Gaskins argued that the felony murder instructions
were improper.  It was argued, inter alia, that the jury
was likely to be confused and misled by the felony murder
instruction.  The trial court advised the jury on one
hand that they were to determine the degree of murder,
and on the other advised the jury that there was no basis
to find second degree murder based upon felony murder.
In effect, the instruction deprived Mr. Gaskins of his
right to have the jury determine the degree of murder, as

-50-

required by M.G.L.c. 265 § 1. The Supreme Judicial Court
acknowledged this issue, but indicated that any problems
with the instruction were mitigated by the fact that there
was an alternative theory of conviction based upon deliberate
premeditation. See Commonwealth v. Gaskins, 419 Mass. 809,
813 & n. 4, 647 N.E.2d 429 (1995). In more recent
years, the Supreme Judicial Court has specifically recog-
nized that only the jury should decide the degree of mur-
der pursuant to M.G.L.c. 265 § 1. Commonwealth v. Vinnie,
428 Mass. 161, 180, 698 N.E.2d 896 (1998).

The fact that Mr. Gaskins was prosecuted upon two
separate theories does not diminish the fact that there
is a fundamental miscarriage of justice arising from the
jury instructions. Indeed where the instructions on
each of these two theories was flawed there was a synergy
that actually enhanced the likelihood of a fundamental
miscarriage of justice. See Schad v. Arizona, 501 U.S.
624, 632 (1991); Yates v. United States, 354 U.S. 298,
312 (1957); Carella v. California, 491 U.S. 263, 269
(1989)("[T]he question is not whether guilt may be spelt
out of a record, but whether guilt has been found by a
jury according to the procedure and standards appropriate
for criminal trials")(Scalia, J., Concurring), quoting
Bollenbach v. United States, 326 U.S. 607, 614 (1946).

As the Supreme Judicial Court stated in Commonwealth
v. Plunkett, 422 Mass. 634, 640, 664 N.E.2d 833 (1996),

-51-

"[i]f a person is to be incarcerated for life without parole, in fairness there must be evidentiary support for each theory on which the judge tells the jury they may find the defendant guilty." See also Commonwealth v. Accetta, 422 Mass. 642, 646-647, 664 N.E.2d 830 (1996).

Federal review of this claim is necessary to prevent a fundamental miscarriage of justice, Reed v. Ross, 468 U.S. 1 (1984), whereas in this case it appears that the jury found Mr. Gaskins guilty based upon these two theories. The instruction for the "deliberate premeditation" theory are clearly incorrect, as argued above. To the degree that the jury may have relied upon the felony murder theory, a separate set of problems is presented. Where the accuracy of the instructions, and the intent of the jury is in question, it would be in the interest of justice to order a new trial because the State Court's ruling involved an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding, 28 U.S.C. § 2254(d), and was contrary to clearly established law as determined by the United States Supreme Court.

IV(D).   THE TRIAL JUDGE ERRED IN REFUSING TO INSTRUCT
THE JURY ON SECOND DEGREE MURDER AS IT RELATES TO
THE FELONY MURDER RULE DIRECTING A VERDICT IN
FAVOR OF CONVICTING THE DEFENDANT OF FIRST DE-
GREE MURDER DENYING DEFENDANT'S 5th, 6th AND 14th
AMENDMENT RIGHTS TO A FAIR TRIAL

A necessary aspect of the right to a jury trial is that

every fact essential to the conviction of an individual must be proved beyond the jury's reasonable doubt. In re Winship, 397 U.S. 358, 363 (1970)(quoting Davis v. United States, 160 U.S. 469, 484, 493 (1895)). A judge commits error when he instructs the jury as a matter of law that a fact essential to conviction has been established by the evidence, thus depriving the jury of the opportunity to make this finding. United States v. Voss, 787 F.2d 393, 398 (6th Cir. 1986)(citing Sandstrom v. Montana, 442 U.S. 510 (1979)). It makes no difference that the evidence supporting proof of that element is "overwhelming," id., 787 F.2d at 399, for it is the jury's role, not the judge's, to find the facts essential to a criminal conviction. United States v. Martin Linen  Supply Co., 430 U.S. 564, 572-73 (1977).

Under Massachusetts law, M.G.L.c. 265 § 1 provides that "[T]he degree of murder shall be found by the jury." This statute requires an instruction on murder in the second degree even if the evidence provides no support for such a verdict. Sandstrom v. Montana, 442 U.S. 510 (1979); See also Cola v. Reardon, 787 F.2d 681 (1st Cir. 1986); Murray v. Carrier, 477 U.S. 478 (1986).

Here, the trial judge instructed the jury as follows:
"If you find the defendant guilty of murder by reason of the felony murder rule, there still

-53-

remains the question of the degree of murder
because under the statute, it says that the
jury will determine the degree of murder.
Under the statute, murder committed during
the commission or attempted commission of
a felony punishable by life imprisonment is
murder in the first degree. You have a duty
if you find the defendant is guilty to re-
turn a verdict of guilty of the highest crime
which has been proven beyond a reasonable
doubt.

**Let me tell you that there is also a second
degree murder by reason of the felony murder
rule, but I am not going to instruct you on
this because the evidence does not warrant
it. That is just for your information."**
(Tr. 4:92-93).

Here, the statute, provided the jury with the option

to convict Gaskins of felony murder in the second degree

even if the evidence here only supported a finding that

the murder was committed during the commission of an

attempted armed robbery, a crime punishable by life im-

prisonment.

The trial judge violated the defendant's due process

rights under the 14th Amendment to the United States

Constitution when it instructed the jury to disregard the

"possibility" of returning a verdict of second degree murder

based on felony murder. See (Tr. 4:93).

The Supreme Judicial Court's ruling involved an un-

reasonable determination of the facts in light of the evi-

dence presented in the State Court proceeding because the

defendant's case is strikingly similar to Commonwealth

v. Brown, 392 Mass. 632, 467 N.E.2d 188 (1984), where the

Massachusetts Supreme Judicial Court held an instruction

-54-

on second degree murder is required. The only difference between the two is that the defendant's attorney failed to object to the court's erroneous charge. See Reed v. Ross, 104 S.Ct. 2901 (1984); Francis v. Henderson, 96 S.Ct. 1708, 1715 n. 2 (1976)("it would seem that counsel must be shown to have knowingly and intelligently acted on his client's behalf")(Brennan, J., dissenting).

Federal review of this claim is necessary to prevent a fundamental miscarriage of justice because, here, the petitioner's right to a fair trial encompasses his right to have his jury instructed in accordance with the law. The trial judge violated the defendant's rights to a fair trial by erroneously failing to instruct the jury as to the "possibility" of returning a verdict of second degree murder by reason of felony murder.

As this court has repeatedly recognized, "harmless error analysis presumably would not apply if a court directed a verdict for the prosecution in a criminal trial by jury." Rose v. Clark, 106 S.Ct. 3103, 3106 (1986); Chapman v. California, 87 S.Ct. 824 (1967); Yates v. Evatt, 111 S.Ct. 1884 (1991). The State Court's ruling here was contrary to, and involved an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding. The defendant's rights to a fair trial necessarily encompasses the right to lawful

-55-

instructions to the jury. The court's violation of the
defendant's due process rights to a fair trial requires
reversal of his conviction.

**V(E).   THE MASSACHUSETTS SUPREME JUDICIAL COURT
RELIEVED THE TRIAL COURT'S MISDIRECTION
ON THE QUESTION OF SECOND-DEGREE FELONY
MURDER BY IMPLICATING THE ALTERNATIVE
THEORY OF DELIBERATE PREMEDITATION FOR
WHICH THERE WAS INSUFFICIENT EVIDENCE**

The present case involves a general verdict predicated
on the possibility of combining findings of what can be
best described as alternative mental states, the one being
premeditation, the other the intent required for murder
combined with the commission of an independently culpable
felony. Schad v. Arizona, 501 U.S. 624, 632 (1991).
If, then, two mental states are supposed to be equivalent
means to satisfy mens rea element of a single offense, they
must reasonably reflect notions of equivalent blameworthi-
ness or, culpability, whereas a difference in their per-
ceived degrees of culpability would be a reason to conclude
that they identified different  offenses altogether. Id.
at 643. No person may be punished criminally save upon
proof of some specific illegal conduct. Id. at 633.

In determining why the trial judge's error in his
remarks and refusal to give second degree felony-murder
instructions, the SJC reasoned that "The fact that the
jury's verdict was also based on a finding of deliberate
premeditation greatly reduces the possibility of any pre-

-56-

judicial error in the charge on felony-murder." Commonwealth
v. Gaskins, 647 N.E.2d 429, 432 n. 4 (Mass. 1995).   There
was insufficient evidence of premeditation.  The prosecu-
tion's entire case was premised on felony-murder where
the crime alleged occurred during the attempted commission
of a felonious act.  Never was there evidence presented
to suggest that the defendant "specifically" intended
to kill the alleged victim.  The record does not reveal
any plan or scheme by the petitioner for the killing.
There was testimony by the testifying codefendants that
earlier before meeting the defendant, that they (Leo
and Ray) planned on robbing a fast food restaurant.  Also,
they testified that they was also planning on robbing
the drug house because Mr. Coffill was "dishonored" by
the drug dealers when he purchased some bad quality
cocaine earlier that day from the drug house and he was
chased away by the dealers.  The  testifying accomplices
also testified that after their attempt to rob the drug
house and the alleged victim, the defendant returned
to the car and said, "I stuck that nigger.  He didn't
make the fence."  This statement has now been rebuffed by
Mr. Womack in his affidavit, and confirmed at an evidentiary
hearing to be a lie.  Also, the alleged victim made a
dying declaration stating how he received his wound to
the abdomen by "falling on a broken bed."

In the instant case, Officer Manning filled out a Lynn Police Incident Report dated February 16, 1991. Officer Manning reported that on that date, at approximately 1:23 a.m., he and Officer Monahan were dispatched to Lynn Hospital to investigate an "apparent stabbing." When the officers arrived at the Lynn Hospital Emergency Room on Boston Street, the victim was being treated inside a Lifeline Ambulance. Officer Manning observed that the victim had a "puncture wound to his left quadrant and a contusion to his left eye area." The victim was transported in the ambulance to Union Hospital on Lynnfield Street.

Officer Manning reported that the victim spoke with them while in the ambulance. The victim told Officer Monahan that he received the wound to his abdomen when he fell on his broken bed. Officer Manning observed that the victim had difficulty conversing because of "pain and/or language barrier."

Officer Manning further reported that while investigating this incident, he and Officer Monahan spoke with a D. Harper and a B. Byrd who were with the victim at the hospital. D. Harper told the Officers that Mr. Clark told him that "he fell on the bed." B. Byrd indicated that he did not know what happened to David Clark. Here the defendant maintained that he did not stab David

Clark.  David Clark's own statement would have corroborated
the defendant's theory of the case.

It is clear that David Clark's statement constituted
a dying declaration and would have been admissible as
an exception to the hearsay rule.  In Massachusetts,
the common law provides that:

> (1) in a prosecution for homicide (2) committed
> upon the declarant,(3) declarant's statement in
> regard to the manner in which he met his death
> is admissible (4) provided he believes at the
> time of the statement that he is to die imme-
> diately and (5) provided he does die within a
> very short time.

Liacos, Handbook of Mass. evid., 454 (1994 ed.).

It is clear from the record that the injury to Mr.
Clark's abdomen was a single puncture wound and that his
statement was in regard to the manner in which he met his
death.  The remaining question is whether the victim believed
that death was imminent at the time that he made the state-
ment.  In the instant case, there was sufficient evidence
for both the judge intitially and then the jury to find
by a preponderance of the evidence that the statement was
admissible as a dying declaration.  The statement was
made by the alleged victim to his friend/cousins, while
taken to the emergency room, and then once again to a
police officer, while he lie bleeding in the ambulance at
the emergency room, and to the intake nurse and doctor
at Union Hospital.  As reported by the officer, David

-59-

Clark was in "pain and had difficulty conversing." The record indicates that David Clark was "alert, oriented, and rational, and could see for himself the full extent of his injuries." See Commonwealth v. Key, 381 Mass. 19, 25, 407 N.E.2d 327 (1980). Based on the nature of the injury, and the circumstances surrounding it all hope of recovery had gone from [the victim's] mind and he [spoke] under a sense of impending death." Key, supra, at 25. (emphasis added).

The defendant's defense was based on the theory that he did not inflict any injury upon the victim and that the victim was injured by another party or in another manner than that which the Commonwealth alleged. The statement which the victim made to both his cousins, the intake nurse, the doctor and the two police officers that he had "fallen on a broken bed" was highly relevant and supported the defendant's theory of defense. David Clark's statement is highly significant in this case considering that the issue the jurors had to decide was whether or not they believed that the defendant was the person who had fatally injured the victim. The record indicates that David Clark first told his cousins/friends and then the police officer that he had injured himself on a broken bed. If defense counsel had admitted the

victim's dying declaration and it had gone to the jury,
then the jurors could have determined whether or not they
believed the victim was truthful with his friends/cousins
and the police officers about the origin of his wound.
If the jurors believed what  David Clark said, the defen-
dant would have necessarily been found guilty on the
charge of felony murder.  This was highly relevant infor-
mation for the jury to consider and it supported the
defendant's claim that he was not responsible for the
victim's death.

In Massachusetts, felony murder and deliberate premedi-
tation are two separate theories and the moral disparity
between the theories bar treating them as alternative
means to satisfy mental element of single offense.
"Deliberate premeditation requires specific intent ---
that the defendant act with the intent that his actions
will cause death..." Commonwealth v. Judge, 420 Mass.
433, 441, 650 N.E.2d 1242 (1995).  The evidence based
upon the verdict is supportable on one ground, but not
on another, Yates v. United States, 354 U.S. 298, 312
(1957), and deliberate premditation is clearly not one of
them.  The reasoning of the SJC in Gaskins at footnote
4, in excusing the judge's error on the felony murder
charge was an unreasonable application of law because
the deliberate premeditation verdict the jury found the
defendant guilty of also, the evidence does not support

-61-

such a finding.

Here the defendant's right to "jury consensus as to [his] course of action" was violated where the error in respect to the felony murder charge undermined the rest of the verdict. The instruction given by the judge could well have been interpreted as a conclusive direction by him to find murder in the first degree by reason of felony-murder once the jurors were convinced of the facts raising the presumption. "[T]he question is not whether guilt may be spelt out of a record, but whether guilt has been found by a jury according to the procedure and standards appropriate for criminal trials." Carella v. California, 491 U.S. 263, 269 (1989)(Scalia, J., concurring), quoting Bollenbach v. United States, 326 U.S. 607, 614 (1946). At no point in the trial did the defendant concede (nor could have logically done so, given the alleged victim's explanation to the nurse, doctor, girlfriend, two cousins and the two police officers on how his wound was received) the issue of premeditation.

It is clear that under Massachusetts law premeditation and the commission of a felony is formally an independent element of first-degree murder. Moreover, each of these ... must be treated as an independent element as to which the jury must agree, because premeditation murder and felony murder

are inherently separate offenses. See Schad v. Arizona,
501 U.S. at 639. As In re Winship, 397 U.S. 358 (1970),
makes clear, due process mandates "proof beyond a reason-
able doubt of every fact necessary to constitute the crime
with which [the defendant] is charged." Id. at 364,
quoting from Schad v. Arizona, 501 U,S. 652 (Dissenting
opinion)(emphasis added).  To establish the crime of
first degree murder in the state court, Massachusetts
would have had to prove premeditation and deliberation.
No such elements were required under the felony-murder
comprised of M.G.L.c. 265 § 1.  Unlike premeditated murder,
felony murder does not require that the petitioner
commit the killing or even intend to kill, so long as the
defendant is involved in the underlying felony.  Felony
murder -- but not premeditated murder -- requires proof
that the defendant had requisite intent to commit and
did commit the underlying felony.  Premeditated murder,
however, demands an intent to kill as well as premeditation,
neither of which is required to prove felony murder.
Schad, 501 U.S. at 654 (internal citation omitted).

Looking at the scenario as given at trial, the alleged
victim comes out of the drug house onto the porch and
Leo Womack punches him in the face stating, "You know what
this is?"  The alleged victim looks at Robert Reid and
Reid says, "Just kick it in."  Out of nowhere the defendant

-63-

puts a knife to David Clark's throat but never indicates his intentions but the victim says that he does not have anything. In arguendo, lets say the defendant did put a knife to his throat. His intention would not be much if the victim stated that he has nothing on him and nothing was ever proving to be taken from him. There can never be a robbery nor an attempt because the man says he has nothing and nothing was ever attempted physically to be taken from him. Moreover, the defendant was never indicted for attempted armed robbery. See Stirone v. United States, 361 U.S. 212 (1960). See also United States v. Miller, 471 U.S. 130, 136 (1985)("Convictions generally have been sustained as long as the proof upon which they are based corresponds to an offense that was clearly set out in the indictment"). "An indictment is amended when it is so altered as to charge a different offense from that found by the grand jury." Ex parte Bain, 121 U.S. 1 (1887).

There is nothing in the evidence suggesting that the defendant was bent on "killing" David Clark or doing bodily harm to him except for the testimony given by Mr. Coffill and Mr. Womack that upon returning to the car Mr. Gaskins said, "I stuck that nigger. He didn't make the fence," now known to be a lie. There was evidence presented that David Clark possessed a two-by-four which had bloodstains on it. The jurors could have reasonably determined that the defendant was defendaning himself, however, he does not concede now and did not during trial, that this was a fact.

-64-

David Clark stated how he was wounded and it was not
by the hands of the defendant. He was in pain and hard
of breathing while in the ambulance, and was told that
his chances of living was not great and he [David Clark]
told the two police officers that he received his wound
by "falling off a broken bed." This information was told
to four other people, 1) intake nurse, 2) the doctor
(which is on record in the medical report), 3) his two
cousins/friends, and 4) possibly his girlfriend. But this
avenue of defense was blocked by the trial judge when
defense counsel tried to offer it into evidence through
David Clark's girlfriend. More importantly, defense
counsel never sought to truly reveal this crucial infor-
mation to the jury in an exculpatory nature through the
other witnesses who were told by david Clark how he received
his wound.

Even though the evidence presented against the defendant
was entirely premised on the felony-murder theory and
not premeditation, the jury's finding of premeditation
to cure the prejudicial impact of the judge's erroneous
felony-murder charge was an unreasonable application
of the law, and is contrary to clearly established federal
law as determined by the United States Supreme Court.

Since there was no evidence of premeditation, the felony-
murder error cannot be excused where the verdict is sup-
portable on one ground, but not on another. Under the
felony-murde rule, the prosecutor was not required to
establish premeditation and deliberation in defendant's

-65-

the defendant's belt. (Tr. 2:103). He was impeached at
trial because  at an earlier suppression hearing on
July 31, 1991, at Essex Superior Court in Salem, Massa-
chusetts he stated he never saw the defendant with a
knife sheath. (Tr. 2:104-105), 4) the jacket of the defendant
indicating the presence of what appeared to be non-visible
human or animal blood, or a false positive reading on
the "T" zipper pull of the jacket, 5) one of the defendant's
sneakers indicating the presence of what appeared to be
non-visible human or animal blood, or a false positive
reading on the bottom of the sole (where? is actually
unknown).

The listed evidence is not overwhelming physical
evidence against the defendant. And they are crucial pieces
of evidence because the Commonwealth's major contention
was that the defendant stabbed David Clark and not any
of the testifying codefendants. Trial counsel's defense
was that the defendant was at the scene but was not the
killer. At all times the defendant proclaimed his innocence
of murder or attemtped armed robbery of David Clark.
It was on the prosecution to prove that the defendant com-
mitted felony murder and murder by deliberate premeditation
beyond a reasonable doubt. In re Winship, 397 U.S. 358
(1970). He did not prove this here.

The defendant received a signed and sworn affidavit

-67-

from Leo Womack stating that he gave false testimony at trial implicating the defendant by stating that the defendant told him, "I stuck that nigger. He didn't make the fence." Affidavit of Womack at ¶ 5. This testimony, now known to be a lie, along with Raymond Coffill's intentionally tailored testimony, was the key evidence at trial that convicted the defendant. Without it, the jurors would have acquitted the defendant. This new evidence, supported by Attorney Lawrence McGuire and by Judge Howard Whitehead, former trial prosecutor, coupled with the questionable physical evidence presented at trial, establishes sufficient doubt about his guilt and justifies the conclusion that his continued incarceration on the murder charge would be a miscarriage of justice, Schlup v. Delo, 513 U.S. at 316, unless his conviction was the product of a fair trial. In this case, the defendant did not receive a fair trial in many factions.

The only evidence to procure a conviction was the testimony of Leo Womack and Raymond Coffill. Their testimony was material and went to the "heart" of the case because it establishes "where" and "when" the defendant allegedly stabbed David Clark. Now, it has been proven that Womack and Coffill lied at Gaskins trial to convict him. This is the appropriate case where comity and finality

-68-

"must yield to the imperative of correcting a fundamentally unjust incarceration." Schlup, 513 U.S. at 320, 321.

The affidavit is quite disturbing because Mr. Womack not only admit that he gave false testimony, but that it was proven that the prosecutor also used the intentionally tailored testimony of Mr. Coffill to convict the defendant. Moreover, the prosecutor admits that he was aware that Mr. Womack was lying but that his [Leo's testimony] "was contrary to what [he] expected." And Mr. Womack's trial counsel admits that his client was being "untruthful" when testifying to "key" events. If this information would have been available during the defendant's trial, there is a "'fair probability,'" that "'the trier of the facts would have entertained a reasonable doubt of his guilt.'" Schlup, supra at 322, quoting Murray v. Carrier, 417 U.S., at 454, 455, n. 17.

There was no physical evidence or forensic evidence connecting the defendant to the crime with which he was charged. The only evidence was through two confessed accomplices, now known to be liars. The defendant satisfy the Carrier and Schlup criteria of actual innocence. Based on the facts now proved, it is more likely than not that "no reasonable juror" would have convicted him.  He should be released from custody.  He has shown on the record that he is entitled to that relief.

-69-

**VII(G).    THE TRIAL JUDGE ERRED IN ADMITTING INTO
EVIDENCE TESTIFYING CODEFENDANTS PLEA
AGREEMENT WITHOUT GIVING CURATIVE IN-
STRUCTIONS DENYING THE DEFENDANT'S FIFTH
AND FOURTEENTH AMENDMENT RIGHTS TO DUE
PROCESS OF LAW AND A FAIR TRIAL**

In this case, the prosecution entered into a plea

agreement with Leo Womack and Raymond Coffill, for their

testimony. Leo Womack's plea agreement recommended a

reduced charge of murder to manslaughter, and to receive

a sentence of for fifteen to twenty years for his testi-

mony. Raymond Coffill, on the other hand, for his

cooperation and testimony was to receive a manslaughter

charge and a sentence of five to seven years.

### Prosecutor's Opening, in part:

> With respect to Coffill, the Commonwealth has
> agreed to reduce the charge of murder to manslaughter
> and to recommend for him a sentence of five to
> seven years at MCI-Walpole.
>
> With respect to Womack, whose involvement, as you
> can see, was greater, the Commonwealth has agreed
> to drop an unrelated charge of unarmed robbery --
> which was accompanied by a charge of assault and
> battery -- and to reduce the murder charge to
> manslaughter but to recommend a sentence of fif-
> teen to twenty years at MCI-Walpole. (Tr. 2:28).

### Direct Examination of Raymond Coffill, in part:

> Q. And you have entered into an agreement with the
>    Commonwealth in exchange for your testimony
>    today. Is that correct?
>
> A. Yes, I have.
>
> Q. And that the Commonwealth would recommend a five
>    to seven year sentence to MCI-Walpole?

A. Yes.

## Direct Examination of Leo Womack, in part:

Q. Mr. Womack, have you entered into an agreement
with the Commonwealth concerning the giving
of testimony here today?

A. I have.

Q. That would be fifteen to twenty years at MCI-Walpole?

A. Correct.

## Prosecutor's Closing, in part:

So, the question isn't whether you like Raymond
Coffill and Leo Womack. The question is whether
Raymond Coffill and Leo Womack are telling the
truth...

Now, the Commonwealth contends that whatever their
liabilities, Raymond Coffill and Leo Womack are
telling you the truth when they tell you that.

(Tr. 4:48-49).

The admission of the agreements in evidence can be looked

upon as a representation by the prosecutor that Womack

and Coffill's testimony were credible, a form of vouching

by the prosecutor who was not subject to cross examination.

Moreover, "a prosecutor may neither inject his personal

opinion on crediblity into the proceedings, nor should

the jury be led to believe that the prosecutor has other

information not presented at trial which leads him to

believe the witness is telling the truth." United States

v. Creamer, 555 F.2d 612, 617 (7th Cir. (1977)(Quoting

Lawn v. United states, 355 U.S. 339. 359-360 n. 15). In

-71-

his closing, the prosecutor said: "Now, the Commonwealth contends that whatever their liabilities, Raymond Coffill and Leo Womack are telling you the truth when they tell you that" (Tr. 4:48-49), and "He wouldn't be able to tell you a lie without letting on." (Tr. 4:56). Here, the prosecutor vouched for Womack's and Coffill's veracity bolstering their credibility. This behavior has been condemned by the courts. See United States v. Borello, 766 F.2d 46, 57 (1985)("The agreement, when introduced by the Government, is used primarily to bolster the credibility of a witness"); United States v. LeFevour, 798 F.2d 977, 984 (7th Cir. 1986)("It was, purely and simply, bolstering that credibility"). The prosecutor's comments here "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986) quoting Donnelly v. DeChristoforo, 416 U.S. 637 (1974).

Also, such an agreement, without curative instructions as recognized by the Massachusetts Supreme Judicial Court, "present the possibility that the jury will believe that the witness is telling the truth, thinking that, because of the agreement's truthful requirement, the Commonwealth knows or can discover whether the witness is telling the truth." Commonwealth v. Ciampa, 406 Mass. 257, 260, 547 N.E.2d 314 (1989). Testimony pursuant to a plea

-72-

agreement made contingent on obtaining an indictment or a conviction, as a result of the witness's testimony, would presumably present too great an inducement to lie, would not meet the test of fundamental fairness, and would not be admitted. Ciampa, 406 Mass. at 262 n. 5. The language was unfairly prejudicial, confusing or misleading matters. See United States v. Constentino, 844 F.2d 30, 34-35 (2d Cir.), cert. denied, 109 S.Ct. 303 (1988).

The plea agreement by itself could be viewed as an implied representation by the Government that the witness's testimony will be truthful. The implied representation or credibility far exceeds any implication of credibility arising from simply calling a witness to testify for the Commonwealth under oath. The judge in this case, after hearing testimony as to the plea agreements in the opening, upon direct examination, and, in the prosecution's closing, failed to "forcefully tell the jury to study the witness's credibility with particular care." Ciampa, 406 Mass. at 266. See (Tr. 4:70-75)(Judge's charge to the jury).

The judge's error in failing to give curative in-structions to cure the prejudicial affect of the plea agreements, coupled with the codefendants testimony, along with the prosecutor's closing argument stating: "Now, the Commonwealth contends that whatever their liabilities,

Raymond Coffill and Leo Womack are telling you the truth when they tell you that" and "He wouldn't be able to tell you a lie without letting on," was so prejudicial that it rendered the trial fundamentally unfair.

The charge failed adequately to direct the jury's attention to the potential influences of the plea agreement on Coffill and Womack's credibility and failed as well to dispel any implication inherent in the plea agreement, and in the presentation of Coffill and Womack as a Government witness, that the Government knew or was warranting that Coffill and Womack was telling the truth. The charge did not tell the jury to weigh Coffill's and Womack's testimony with care and not consider Coffill's and Womack's testimony. It did not warn the jury that, in entering into the agreement and presenting them as a witness, the Government did not know whether Coffill or Womack was telling the truth (in which we now know they both were lying). And "only by a cautionary instruction covering these points could the jury have been in a position to evaluate the impact of the plea agreement and testimony presented to it." Ciampa, 406 Mass. at 257, 263-264 (emphasis added).

The State Court's ruling was an unreasonable determination of the facts in light of the evidence presented at trial, 28 U.S.C. § 2254(d), and federal review of this claim is

-74-

necessary to prevent a fundamental miscarriage of justice because the Fifth Amendment to the United States Constitution and the Fourteenth Amendment to the United States Constitution guarantees a criminal defendant due process of law in a court of law. In this case, the defendant was denied that right. If but for the error, the defendant may not have been convicted. And its because of this his conviction should be reversed.