# EXHIBIT A

Tony B. Gaskins, Pro Se
Souza Baranowski-CC
P.O. Box 8000
Shirley, Ma. 01464


Dennis M. Leary, Esq.
Clerk of Court
Essex Superior Court                    April 1, 2000
34 Federal Street
Salem, Ma. 01970


Re: Commonwealth v. Gaskins
    No. 91-CR-018642


Dear Mr. Leary,

    Enclosed for filing please find the following:

    1) Certificate of Service;

    2) Motion to Waive Filing Fees and Court Costs;

    3) Motion to Proceed in Forma Pauperis;

    4) Affidavit in Support of Motion To Proceed in Forma Pauperis;

    5) Motion to Appoint Counsel;

    6) Motion For An Evidentiary Hearing;

    7) Motion For Release From Unlawful Restraint, For New Trial,
       For Post-Trial, Discovery and Hearings;

    8) Memorandum of Law in Support of Motion For Release From
       Unlawful Restraint;

    9) Affidavit of Leo Womack, Jr. and Memorandum and Order of
       William G. Young, C.J. (Exhibits)

    Thank you for your attention and cooperation in this matter.

                                        Very Truly Yours,

                                        Tony B. Gaskins, Pro Se

Enclosures:

cc: Kevin M. Burke
    District Attorney

    Thomas F. Reilly
    Attorney General


A C C O O 2

91-CR-018642

## CERTIFICATE OF SERVICE

I, Tony B. Gaskins, hereby certify that I caused a true copy of the foregoing documents to be served on the District Attorney of Essex County and the Attorney General, by certified mail with return receipt at their perspective place of employment.

Tony B. Gaskins, Pro Se
S.B.C.C.
P.O. Box 8000
Shirley,Ma. 01464

Dated: 4/4/00

A00003

COMMONWEALTH OF MASSACHUSETTS

Essex, SS.                                    Superior Court
                                             No. 91-018642

Commonwealth,

v.

Tony B. Gaskins,
     Defendant.

### MOTION TO WAIVE FILING FEES AND COURT COSTS

Now comes the defendant in the above-criminal matter move
this Honorable Court to waive all filing fees and court costs.
The defendant contends that he is indigent and is unable to pay
court costs and filing fees. See attached Motion to Proceed in
Forma Pauperis and Affidavit in Support of Motion to Proceed
in Forma Pauperis.

                                        Respectfully Submitted,

                                        Tony B. Gaskins, Pro Se
                                        S.B.C.C.
                                        P.O. Box 8000
                                        Shirley, Ma. 01464

Dated: 4/4/00

A00004

## COMMONWEALTH OF MASACHUSETTS

Essex;SS.                                        Superior Court
                                                No.91-018642


Commonwealth

v.

Tony B. Gaskins,
     Defendant.


### MOTION TO PROCEED IN FORMA PAUPERIS

        Now comes the defendant in the above-criminal matter move

this Honorable Court for an order permitting him to proceed in

Forma Pauperis without prepayment of costs and filing fees.

The defendant has attached an affidavit in support of this motion.


                                    Respectfully Submitted,

                                    Tony B. Gaskins,Pro Se
                                    S.B.C.C.
                                    P.O. Box 8000
                                    Shirley,Ma. 01464

Dated: 4/7/00


A00008

COMMONWEALTH OF MASSACHUSETTS

Essex,SS.                                      Superior Court
                                              No.91-018642


Commonwealth

v.

Tony B. Gaskins,
     Defendant.


## AFFIDAVIT IN SUPPORT OF MOTION
## TO PROCEED IN FORMA PAUPERIS

I, Tony B. Gaskins, am the pro se defendant in the above-
criminal matter. In support of my motion to proceed without
being required to pay filing fees or court costs, I state
that because of my poverty I am unable to pay the costs of
said proceedings and that I believe I am entitled to an order
granting the motion to proceed in Forma Pauperis.

I declare that the responses which I have made below are
true.

1) Are you presently employed?  Yes____  No x

2) I have received no money from any outside source
except occasionally from family and friends.

3) I don't have any money in a checking account nor do I
have any assets.

4) The persons dependent upon my support are my two sons.
Signed under the pains and penalties of perjury.


                                        Tony B. Gaskins,Pro Se
Dated: 1/1/05

COMMONWEALTH OF MASSACHUSETTS

Essex,SS.                                          Superior Court
                                                  No.91-018642

Commonwealth

v.

Tony B. Gaskins,
     Defendant.

## MOTION TO APPOINT COUNSEL

Now comes the defendant in the above-criminal matter
moves this Honorable Court to appoint him counsel to pro-
perly bringforth his new trial motion. The defendant has
newly discovered evidence in which if an experienced attor-
ney is appointed to represent him, he will show that justice
may have not been done.

WHEREFORE, the defendant prays that this court allows
his motion to appoint counsel.

Respectfully Submitted,

Tony B. Gaskins,Pro Se
S.B.C.C.
P.O. Box 8000
Shirley,Ma. 01464

Dated: 4/4/00

A00007

COMMONWEALTH OF MASSACHUSETTS

Essex,SS.

Superior Court
No.91-018642

Commonwealth

v.

Tony B. Gaskins,
Defendant.

## MOTION FOR AN EVIDENTIARY HEARING

Now comes the defendant, pursuant to Mass.R.Crim.P.30(c)
(3), moves this Honorable Court to grant the defendant an
evidentiary hearing in this matter. The defendant contends
that he received a sworn affidavit from Leo Womack stating
that the prosecutor compelled him to lie on the witness stand
against the defendant at his trial for murder. Justice mandates
that an evidentiary hearing be held to bring out relevant facts
based upon the defendant's claim.

Respectfully Submitted,

Tony B. Gaskins,Pro Se
S.B.C.C.
P.O. Box 8000
Shirley,Ma. 01464

Dated: 4/4/00

COMMONWEALTH OF MASSACHUSETTS

Essex,SS.                                    Superior Court
                                             No.91-018642

Commonwealth

v.

Tony B. Gaskins,
      Defendant.

### MOTION FOR RELEASE FROM UNLAWFUL RESTRAINT, FOR
### NEW TRIAL, FOR POST-TRIAL, DISCOVERY AND HEARINGS.

Now comes the defendant pursuant to Mass.R.Crim.P.30(a)

and '(b), and Article 12 of the Massachusetts Declaration of

Rights, as well as Amendment 5 and 14 to the United States

Constitution, moves this Honorable Court to grant this mo-

tion for release from unlawful restraint and/or new trial.

As will be shown in his memorandum of law, the defendant's

trial was seriously prejudiced when the prosecutor knowingly,

wilfully and intentionally used the perjured testimony of Leo

Womack to procure a conviction.

Defendant was convicted in this court after a four day

trial for first degree murder by a jury before John F. Murphy,

Judge. This is the defendant's fourth new trial motion pre-

sented to this court by way of the order of Chief Judge

William G. Young,D.J., in Gaskins v. Duval, C.A. No.97-11540-

WGY.

The defendant was denied due process and equal protection

of the law when the overzealous prosecutor overstepped his

boundaries and duty by knowingly using testimony that was

knowingly false and highly prejudicial to him. There was no

way the defendant could properly defend against this form of

A00009

misconduct by the prosecutor. And the only remedy is to afford
the defendant release from unlawful restraint or grant him a
new trial.

The defendant also seeks an evidentiary hearing on the im-
portant matter stressed to this court in his new trial motion.
And if an evidentiary hearing is required, then the defendant
requests that he also be appointed counsel to properly adju-
dicate this matter further.

Wherefore, the defendant prays that this motion is granted
and he is released from unlawful restraint, or in the alterna-
tive granted a new trial.

Respectfully Submitted,

Tony B. Gaskins, Pro Se
S.B.C.C.
P.O. Box 8000
Shirley, Ma. 01464

Dated: 1/4/00

A00010

COMMONWEALTH OF MASSACHUSETTS

Essex,SS.                                          Superior Court
                                                  No.91-018642

Commonwealth

v.

Tony B. Gaskins,
    Defendant.

### MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR RELEASE FROM UNLAWFUL RESTRAINT, FOR NEW TRIAL, FOR POST-TRIAL, DISCOVERY AND HEARINGS.

In decideng whether to grant a motion for release from unlawful restraint and for new trial, the question of whether "justice may not have been done," a trial is left largely to the sound discretion of the judge who presided at trial. Commonwealth v. Gagliardi,21 Mass. App. Ct. 439 (1986). The motion judge also has broad discretion as to the manner in which the motion is to be heard, by affidavit or by receiving oral testimony. Commonwealth v. Hubbard,371 Mass. 160,174-175 (1976); See also: Mass.R.Crim.P.30(c)(3),(6). However, "where a substantial issue is supported by a substantial evidentiary showing, the judge should hold an evidentiary hearing." Commonwealth v. Stewart,383 Mass. 253,260 (1981); Commonwealth v. Meggs,30 Mass. App. Ct. 111,114-116 (1991).

While Mass.R.Crim.P.30(b) is framed in discretionary terms, our Supreme Judicial Court has repeatedly held that " If. . . . the original trial was infected with the prejudicial constitutional error, the judge has no discretion to deny a new trial." Earl v. Commonwealth,358 Mass. 181,184 (1969); Commonwealth v. Penrose,363 Mass. 677,681 (1973); Commonwealth v. Cook,380 Mass. 314,320-321 (1980); Lannon v. Commonwealth,

379 Mass. 786,788 (1980). Moreover, a motion judge has no

discretion to deny a motion for release from unlawful re-

straint, pursuant to Mass.R.Crim.P.30(a), where the motion

presents a sufficient showing of either constitutional de-

fective instructional error, Commonwealth v. Repoza(II),

400 Mass. 516, cert. denied, Massachusetts v. Repoza, 484

U.S. 935 (1987); Commonwealth v. Sires, 405 Mass. 541 (1989),

or constitutionally defective assistance of counsel,

Commonwealth v. Cook, supra; Commonwealth v. Hodge, 386 Mass.

165 (1982); Commonwealth v. Kane, 19 Mass. App. Ct. 129 (1984);

Commonwealth v. Haggerty, 400 Mass. 437 (1987). In deciding

such motion, Mass.R.Crim.P.30(b) requires, as a matter of

law, that the motion judge "make such findings of facts as

are necessary to resolve the defendant's allegations of er-

rors of law." Commonwealth v. Sullivan, 385 Mass. 497,502 (

1982); Commonwealth v. Grace, 397 Mass. 303,305 (1986).


## ARGUMENT

I.   THE PROSECUTION KNOWINGLY, WILFULLY AND INTENTIONALLY
     USED PERJURED TESTIMONY TO PROCURE A CONVICTION OF
     THE DEFENDANT WHICH DENIED THE DEFENDANT EQUAL
     PROTECTION OF THE LAW AND A FAIR TRIAL AS GUARANTEED
     BY ARTICLE XII OF THE MASSACHUSETTS DECLARATION OF
     RIGHTS AND FIFTH AND FOURTEENTH AMENDMENTS TO THE
     UNITED STATES CONSTITUTION

It is well settled that to obtain a conviction by the use

of testimony known to the prosecution to be perjured offends

due process. Durley v. Mayo, 351 U.S. 277 (1956)(Douglas, J.

dissenting). However, "perjured testimony, without more, does

not rise to the level of a constitutional defect." Sanders v.

Sullivan, 863 F.2d 218, 222 (2nd Cir. 1988); Giglio v. United

States, 405 U.S. 150 (1972); United States Ex Rel. Burnett v.

Illinois,619 F.2d 668,674, cert. denied, 449 U.S. 880 (1980).
"[A] conviction obtained by the knowing use of perjured tes-
timony is fundamentally unfair, and must be set aside if there
is any reasonable likelihood that the false testimony could
have affected the judgment of the jury." U.S. v. Tavares,
93 F.3d 10 (1st. Cir. 1996). Under federal law perjury occurs
when a "witness testifying under oath or affirmation. . .
gives false testimony concerning a material matter with the
willful intent to provide false testimony, rather than as a
result of confusion, mistake, or faulty memory. U.S. v.
Tavares,supra, at 14.(Citations omitted). Due process viola-
tion requires "a showing of prosecutorial involvement in the
perjury." Burks v. Egeler,512 F.2d 221,229 (6th Cir. 1975).

    This case relied heavily on the testimony of two code-
fendants, Leo Womack and Raymond Coffill, to convict the de-
fendant for first degree murder. The physical evidence pre-
sented by the prosecution was not overwhelming so the co-
defendants "corroborated testimony" was "key" to obtaining
a conviction. The testimony of Leo Womack was perjured to
corroborate Raymond Coffill's testimony and the prosecutor
knew of the perjured testimony because he coerced Mr. Womack
into perjuring himself on the witness stand to obtain a con-
viction.1/

─────────────
1/The perjured testimony came when Leo Womack corroborated Raymond
Coffill's out-of-court statement at trial by testifying that the
defendant said, "I stuck that nigger. He didn't make the fence."
See Affidavit of Leo Womack at ¶5 attached as an exhibit.

The defendant understands that "perjured testimony, without more, does not rise to the level of a constitutional defect." Sanders,supra.,at 222. (Quoting Giglio v. United States,405 U.S. 150 (1972)). In this case, the defendant can show a due process violation by "a showing of prosecutorial involvement in the perjury." Burks,supra., at 229. The defendant, by showing the prosecutor's involvement in knowingly and wilfully using perjured testimony in a "first degree murder trial," will show why it cause[d] the defendant's trial to pass the line of tolerable imperfection and fall into the field of fundamental unfairness." Curran v. Delaware,259 F.2d 707,713 (3rd Cir. 1958).2/

PROSECUTOR'S OPENING ARGUMENT,IN PART:

They got inside the car. Once inside the car Tony Gaskins said: "I got that nigger. I stabbed him. I think in the stomach. He didn't make the fence." (Tr.2:27),

DIRECT EXAMINATION OF COFFILL,IN PART:

Q. Now, while you were in the car, was there any conversation, specifically on Tony's part, as to what happened during the chase?

A. Yes.

Q. What did he say?

A. He said he stuck him.

Q. Were those his exact words?

2/ Raymond Coffill and Leo Womack's trial testimony will be given in part addressing the "heart" of the prosecution's case. The Prosecutor's opening, direct examination, and closing will be given in part addressing the "heart" of his case.

-5-

A. No. He said: I stuck that nigger. He didn't make the fence. (Tr.3:142)

## DIRECT EXAMINATION OF WOMACK, IN PART:

Q. Was there any conversation in the car while you were driving around?

A. Not at that point. He was driving around looking for the guy. at that point we had a conversation. The conversation was Reid asked Gaskins, did you get him? His exact words were quote-unquote "I stuck that nigger. He didn't make the fence. I got him." (Tr. 3:211)

## PROSECUTOR"S CLOSING ARGUMENT, IN PART:

So the question isn't whether you like Raymond Coffill and Leo Womack. The question is whether Raymond Coffill and Leo Womack are telling the truth when they say that it was Tony Gaskins who pulled a knife on David Clark during the early morning of February 16th,1991, and who, after chasing David Clark down Boston Street and into a driveway, got in the car and said: "I stabbed that nigger. He didn't even make the fence." (Tr.4:48)

Now, they drove around for awhile. Then, at that point, Coffill said--and I think Womack said the same words-- that Gaskins said to him: "I stabbed that nigger. He didn't make the fence." (Tr.4:53)

. . .Raymond Coffill said that Tony Gaskins had come to the car and said: "I stabbed that nigger. He didn't make the fence." (Tr.4:57-58)

And when he emerged, he apparently had accomplished his purpose, because he said: "I stabbed that nigger. He didn't make the fence." (Tr.4:65-66)

In his opening, the prosecutor said the testifying co-defendants will testify that, in the car, Gaskins said "I stuck that nigger. He didn't make the fence." (Tr.2:27). In his direct examination of Raymond Coffill, the prosecutor solicited the following testimony: No. He said: "I stuck that nigger. He didn't make the fence." (Tr.3:142). In his direct examination of Leo Womack he solicited the following testi-

-6-

mony: "His "exact" words were quote-unquote I stuck that
nigger. He didn't make the fence." (Tr.3:211).  The pro-
secutor deliberately misrepresented the truth. Miller v.
Pate,87 S.Ct. 785,788 (1967). It is clear that when a con-
viction is shown to be based even in part upon perjured
testimony, that a court will not stop to inquire as to the
precise effect of the perjury, but will order a new trial
if without the perjury the jury might not have convicted.
See Mesarosh v. United States,352 U.S. 1 (1956); Larrison
v. United States,24 F.2d 82 (7th. Cir.1928). And Womack's
trial testimony establishes "when" and "where" the victim
was allegedly stabbed by the defendant. So the conversation
in the car becomes the "key" evidence in establishing the
defendant's guilt. And this is knowing, wilful and inten-
tional use of perjured testimony in a trial to procure a
conviction.

        In order, however, for such false testimony to warrant
the relief here sought, it must have been material to the
case. Imbler v. Craven,298 F.Supp. 795 (1969). The key
words testified to at trial to procure a conviction is the
alleged statement in the car made by the defendant to the
testifying codefendants that: "I stuck that nigger. He didn't
make the fence." this statement as alleged is the only con-
nection of the defendant to the crime as charged, which
makes it material. Without Womack's perjured testimony, the de-
fendant would most likely not have been convicted. That is
why it became, and was, so important to the prosecutor that
the two codefendants testimony, in that regard, be the same.
"[T]he fundamental conceptions of justice which lie at the

base of our civil and political institutions must with equal
abhorrence condemn as a travesty a conviction upon perjured
testimony if later, but fortunately not too late, its false-
ness is discovered." Jones v. Kentucky, 97 F.2d 335, 338 (6th
Cir. 1938). In this case, it has been discovered, and allow-
ing the conviction to stand violates due process.

Four times in the prosecution's closing, he stated the
defendant while in the car said: "I stabbed that nigger. He
didn't make the fence." Since it was clear that no one saw
the defendant stab David Clark; since the knife found at
Robert Reid's home had fingerprints on it, but none belonged
to the defendant; Since the knife sheath consistent with
possibly fitting the knife found in Reid's home was said to
have been on the defendant's person by detective Flynn but
Rocco Perrlino said differently; And the sheath was tested
for fingerprints whereas fingerprints were found but none
matching the defendant's. This evidence alone could not
convict the defendant for murder. And this evidence with
only the uncorroborated testimony of Raymond Coffill stating,
unconvincingly, that the defendant while in the car said, "
I stuck that nigger. He didn't make the fence," could not
convict the defendant for murder. It was the prejudicial
perjured testimony of Leo Womack that helped secure a con-
viction of the defendant. And it is axiomatic that "state
action, as defined by active Government acts---generally
knowing prosecutorial use of perjury---triggers a due process
violation." Burks v. Egeler, supra, at 225. In Larrison, the
court stated that it would grant a new trial if the court
determines that the new evidence "might" alter the verdict.

In this case, it can be easily determined. If you take away the perjured testimony of Leo Womack when he states that Gaskins said: "I stuck that nigger. He didn't make the fence," leaving only the uncorroborated testimony of Raymond Coffill, this new evidence "might" alter the verdict.

Moreover, if literally applied. . .[the Larrison test w]ould require reversal in cases of perjury with respect to even minor matters, especially in light of the standard jury instruction that upon finding that a witness had deliberate-ly proffered false testimony in part, the jury may disregard his entire testimony. Thsu, once it is shown that a material witness has intentionally lied with respect to any matter, it is difficult to deny that the jury, had it known of the lie, "might" have acquitted. United States v. Stofsky,527 F.2d 237,246 (2nd Cir. 1975).

If but for the perjured testimony, the defendant may have not been convicted. It is clear that justice may have not been done in this case due to the prosecutor's knowing use of perjured testimony which denied him his state and federal constitutional rights to due process and a fair trial.

## CONCLUSION

For the reasons stated herein this motion, the defendant requests that this Honorable Court release him from unlawful restraint, or alternatively grant him a new trial in order for him to be fairly heard and free from prosecutorial mis-conduct in his overzealousness to convict someone through the use of perjured testimony.

A00018

Respectfully Submitted,

Tony B. Gaskins, Pro Se
S.B.C.C.
P.O. Box 8000
Shirley, Ma. 01464

Dated: 4/4/00

## EXHIBITS

**Affidavit of Leo Womack,Jr.**

**Memorandum and Order of William G. Youg,C.J.**

## AFFIDAVIT OF LEO WOMACK, JR.

I, Leo Womatk, Jr. hereby depose and state the following to be true, that:

1.) I make this affidavit under no duress or pressure from any outside source, nor has anyone intimidated me into making this affidavit.

2.) I am the codefendant of Tony Gaskins.

3.) I am presently serving fifteen to twenty years for manslaughter; time I received for giving testimony against Mr. Gaskins in which he was convicted of first degree murder.

4.) I come now to recant my testimony and honestly that my testimony was coerced by the then prosecutor, Howard Whitehead.

5.) The prosecutor specifically told me that I must corroborate Raymond Coffill's testimony and statement by saying Tony Gaskins said, when he returned to the car: "I stuck that nigger. He didn't make the fence."

6.) I really didn't want to lie like this but if I didn't I wouldn't have gotten the deal I did.

7.) My conscience is bothering me too bad and I had to come forward in order for me to have a clear consceince with a peace of mind.

8.) Mr. Gaskins never said that to me. I lied for the prosecutor. I just did what I was told.

9.) I will testify to these facts in any court of law of the Commonwealth.

Signed on this _13_ day of _October_ , 19_99_ , under the pains and penalties of perjury.

Affiant,

Notary Public

SUSAN KILUK
Notary Public
My Commission Expires August 12, 2005

_Susan Kiluk_
_October 13, 1999_ .

A00021

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| TONY B. GASKINS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) CIVIL ACTION |
| | ) NO. 97-11540-WGY |
| RONALD T. DUVAL, | ) |
| | ) |
| Respondent. | ) |

MEMORANDUM AND ORDER

YOUNG, C.J.                                          March 28, 2000

I.   INTRODUCTION

The Petitioner, Tony B. Gaskins ("Gaskins"), brings this
habeas corpus petition (the "Petition") pursuant to 28 U.S.C. §
2254 claiming that the proceedings at the state level were
fraught with constitutional violations that prevented him from
receiving a fair trial.¹ Whether these claims are meritorious,
however, cannot be addressed at this time because Gaskins has
failed to exhaust his state remedies as required by federal
statute. See 28 U.S.C. § 2254(b)-(c). Consequentially, as

_____

¹ The Respondent, Robert Duval ("Duval"), did not submit a
brief, thus this Court must proceed without the benefit of his
legal analysis.

A00022

explained in more detail below, the Petition must be dismissed
without prejudice.

II.   PROCEDURAL AND FACTUAL HISTORY

The facts relevant to this Petition are as follows:   On
February 28, 1992, Gaskins was convicted of murder in the first
degree and subsequently was sentenced to a term of life
imprisonment without parole.   The conviction stemmed from a
stabbing which occurred during an attempted robbery.   The case
against Gaskins was largely based on the testimony of two men,
Raymond Coffill ("Coffill") and Leo Womack ("Womack").   At the
time of the trial, each of these witnesses had a charge of murder
pending against him for the death of the victim and both
testified in exchange for an agreement that reduced the charge to
manslaughter and a recommendation from the prosecution regarding
the term of incarceration.

Following his conviction, Gaskins appealed to the Supreme
Judicial Court arguing that:   (1) the judge erred in denying his
motion for a required finding of not guilty;   (2) the jury
instructions were defective regarding the possibility of murder
in the second degree;   (3) the composition of the jury pool should
have been challenged;   and (4) defense counsel was ineffective in
failing to offer certain allegedly exculpatory evidence.
Commonwealth v. Gaskins, 419 Mass. 809, 810 (1995).   The Supreme

2

Judicial Court ruled each of the arguments without merit, affirmed the conviction, and declined to grant a new trial or reduce the verdict. See id.

After the Supreme Judicial Court's ruling affirming his conviction, Gaskins filed a motion for a new trial in which he made the same allegations as in his petition to the Supreme Judicial Court and added several new arguments. The fresh arguments included the use of allegedly perjured testimony to obtain the conviction, the prosecutor's inappropriate comments vouching for the credibility of Womack and Coffill, an error in the reasonable doubt instructions, and the ineffective assistance of appeal counsel. The presiding judge ruled that "[a]ll of the issues now raised by the defendant in this motion for a new trial have either been previously raised and ruled upon in the prior appeal, or have been waived." Commonwealth v. Gaskins, No. 91-018642, slip op. at 2 (Mass. Sup. Ct. May 8, 1997). The waiver ruling was based on Mass. R. Crim. P. 30(c)(2), which provides that "all grounds for relief claimed by the defendant . . . shall be raised by the defendant in his original or amended motion." Because Gaskins had failed to identify the three new arguments set forth in his motion for a new trial during his appeal, they were deemed to be waived.

3

A0C024

Gaskins also sought an evidentiary hearing on the issue of the jury pool composition. Although the Supreme Judicial Court ruled against Gaskins on this issue, the court also stated that the record was incomplete and noted that Gaskins had failed to move for a new trial or a hearing on the motion. Gaskins, 419 Mass. at 813-14. The Superior Court also denied this motion, in part because Gaskins had failed to meet the three-prong test described in Duren v. Missouri, 439 U.S. 357, 364-68 (1979). See Commonwealth v. Gaskins, No. 91-018642, slip op. at 4 (Mass. Sup. Ct. June 16, 1998).

Following his appeals in the state courts, Gaskins filed a habeas petition in federal court on July 2, 1997. This Court denied the original Petition on July 28, 1997, ruling it was time-barred by the applicable statute. While this Court concluded that a one-year grace period existed in which to file a habeas petition, it also ruled that Gaskins' habeas petition was nonetheless untimely because the grace period had not been tolled during the pendency of Gaskins' motion for state collateral relief. Gaskins appealed the ruling and the First Circuit Court of Appeals held that the grace period was tolled once Gaskin filed a motion for relief in state court. See Gaskins v. Duval, 183 F.3d 8, 9 (1st Cir. 1999). As a result, the Petition is again before this Court.

4

A0G025

III. DISCUSSION

On its face, the Petition presents the same legal theories that were before the state court and thus would appear ripe for disposition by this Court. While the Petition was pending, however, Gaskins filed the affidavit of Leo Womack to support his contention that the prosecution knowingly and intentionally used perjured testimony to obtain his conviction. See Pet. Motion for Leave of Court to Add Aff. of Leo Womack. In the affidavit Womack asserts, apparently for the first time, that he lied on the witness stand and that his "testimony was coerced by the then prosecutor, Howard Whitehead." Womack Aff. ¶ 4. According to Womack, "[t]he prosecutor specifically told me that I must corroborate Raymond Coffill's testimony." Womack Aff. ¶ 5. Coffill's and Womack's testimony, that Gaskins had essentially confessed to the stabbing, was the linchpin of the Commonwealth's case.

From the record before this Court, it does not appear that this evidence was submitted to the state court. Gaskins first raised the issue of perjured testimony in his motion for a new trial. In that motion, Gaskins' sole offer of evidence was a prior inconsistent statement by Womack. See Opp. to Def. Mot. for Release at 28; Commonwealth v. Gaskins, No. 91-18642 (Mass. Sup. Ct. Apr. 29, 1997). The Commonwealth responded that Gaskins

5

A00026

had "not a scintilla of evidence to support the assertion" that the prosecutor encouraged the witness to lie. See id. Moreover, according to the Commonwealth, "there [was] nothing in the record which would warrant a reasonable person in concluding that perjury occurred much less that the claimed perjury was suborned by the prosecutor." Id. at 29. Womack's affidavit, at the least, now constitutes a "scintilla of evidence" on the issue of perjury and raises serious questions regarding prosecutorial misconduct. More importantly, it casts doubt on the fairness of Gaskins' trial.

Because the factual underpinnings of his habeas petition are substantially different from those presented to the state court, this Court concludes that Gaskins has failed to exhaust his state remedies as required by statute. To have exhausted state remedies, as required by 28 U.S.C. § 2254(b) and (c), a habeas corpus petitioner must have presented the substance of his claim to the state courts. See Picard v. Connor, 404 U.S. 270, 278 (1971); Lanigan v. Maloney, 853 F.2d 40, 42 (1st Cir. 1988); Domaingue v. Butterworth, 641 F.2d 8, 12 (1st Cir. 1981). The exhaustion requirement is not satisfied if a petitioner presents new factual allegations in federal court that transform a previous claim or cast it in a significantly different light. See Turner v. Fair, 617 F.2d 7, 11 (1st Cir. 1980). In general,

6

the exhaustion doctrine requires that a state have an opportunity to consider the claims prior to federal court intervention.  See Picard, 404 U.S. at 276; Lanigan, 853 F.2d at 42.

Gaskins' present claim of prosecutorial misconduct is materially broader than the one originally presented to the Massachusetts Superior Court.  At the motion for a new trial, Gaskins offered only a prior inconsistent statement to support his theory of perjury and, in reality, had no evidence to endorse his allegations of prosecutorial involvement.  Now, Gaskins has the affidavit of Womack, a witness who was key to his conviction, recanting his testimony and claiming coercion on the part of the prosecutor.

Moreover, Mass. R. Crim. P. 30(a) and (b) allow Gaskins to raise this issue at the state level.  Rule 30(a) allows an individual imprisoned by the state pursuant to a criminal conviction to request a judge to release him or correct his sentence at any time on the grounds that his restraint was imposed in violation of the law.  Further, Rule 30(b) provides that a trial judge may grant a new trial at any time if it appears that "justice may not have been done."  The affidavit of Womack appears to be sufficient evidence to support a review of Gaskins' claim under these rules.

7

Because the Petition now contains both exhausted and un-
exhausted claims, a so-called "mixed petition," it is DISMISSED
without prejudice pursuant to <u>Rose</u> v. <u>Lundy</u>, 455 U.S. 509, 522
(1982); <u>Fahey</u> v. <u>Dickhaut</u>, No. 92-40131-NMG, 94 WL 376279, *3 (D.
Mass. July 15, 1994) (Gorton, J.) (docket no. 13). Gaskins may
either return to state court properly to exhaust his remedies
with respect to the unexhausted claim, or amend the Petition to
delete the unexhausted claim. If he chooses the latter course of
action, however, Gaskins should be aware that he risks forfeiting
consideration of the unexhausted claims in a subsequent petition.
<u>Rose</u>, 455 U.S. at 521.

*William L. Young*

WILLIAM G. YOUNG
CHIEF JUDGE

Tony B. Gaskins, Pro Se
Souza Baranowski-CC
P.O. Box 8000
Shirley, Ma. 01464


Dennis M. Leary, Esq.
Clerk of Courrts                    April 27, 2000
Essex Superior Court
34 Federal Street
Salem, Ma. 01970



Re: Commonwealth v. Gaskins
    No. 91-018642


Dear Clerk,

    Enclosed for filing please find the following:

    1) Certificate of Service.

    2) Motion For Leave to Add to The Record The Affidavit of
Clara G. Scott w/ attached Affidavit.

    Thank you for your attention and cooperation in this matter.

                              Very Truly Yours,


                              _____
                              Tony B. Gaskins, Pro Se


Enclosures

cc: Kevin M. Burke
    District Attorney


A00030

· 91-018642

## CERTIFICATE OF SERVICE

I, Tony B. Gaskins, hereby certify that I caused a true copy of the following documents to be served upon, Kevin M. Burke, District Attorney, at his place of employment, by first class mail pre-paid postage.

```
_____
Tony B. Gaskins, Pro Se
S.B.C.C.
P.O. Box 8000
Shirley, Ma. 01464
```

Dated:

COMMONWEALTH OF MASSACHUSETTS

Essex,SS.                                    Superior Court
                                             No. 91-018642

Commonwealth

v.

Tony B. Gaskins,
     Defendant.

### MOTION FOR LEAVE TO ADD TO THE RECORD THE AFFIDAVIT OF, CLARA G. SCOTT, IN SUPPORT OF THE DEFENDANT'S MOTION FOR RELEASE FROM UNLAWFUL RESTRAINT

Now comes the defendant in the above-criminal matter
move for leave of court to add to the record the affidavit
of Clara G. Scott.

The affidavit is exculpatory in its contents because
the affiant had a conversation with Vivian Avant, the al-
leged victim's girlfriend in this case, who revealed to Mrs.
Scott that she knew the defendant was not the killer. This
is important in this matter because there is new evidence
which has been brought forth indicating that the defendant
is not responsible for the death of David Clark.

                                   Respectfully Submitted,

                                   _____
                                   Tony B. Gaskins,Pro Se
                                   S.B.C.C.
                                   P.O. Box 8000
                                   Shirley,Ma. 01464
Dated:

A0032

<u>EXHIIBIT</u>

**AFFIDAVIT OF CLARA G. SCOTT**

## AFFIDAVIT OF Clara G. Scott

I, Clara G. Scott, hereby depose and state the following
to be true, that:

1.  I am the mother of Tony Gaskins.

2.  I sat through a portion of his trial when he was tried
for murdering that young man, David Clark.

3.  When I was sitting in the audience as a spectator, I was
seated next to my grand daughter.

4.  Upon a break in the trial, I had a conversation with the
dead boy's girlfriend, Vivian avant.

5.  She told me that she knew for a fact that she knew that
my son is innocent of killing her boyfriend, David Clark.

6.  She told me that she would reveal this to the court if
she was allowed to.

Signed and sworn to on this $83$ day of $APRIL$ ,2000, under
the pains and penalties of perjury.

Affiant,

Clara G. Scott
44 John Elliott Square
Apt. #509
Roxbury,Ma. 02119

Witness Signature

Subscribed to and sworn before me this
$8$Th day of $April$ , $2000$
Barbara Jean Cirone
Barbara Jean Cirone, Notary Public
My Commission Expires Aug. 4, 2006

My Commission Expires Aug. 4, 2006
Barbara Jean Cirone, Notary Public
day of
Subscribed to and sworn before me this

April 13, 2000

I, Susan Bridget Manning hereby solemnly swear that the following events are accurate and truthful.

On Thursday April 12, 2000; I visited with Leo Womack on behalf of Tony Gaskins, at the Southeastern Correctional Center located in Bridgewater Massachusetts. I arrived at approximately 1:40 p.m. I was seated in the visiting room in chair #3. At approximately 2:05 p.m., Mr. Womack arrived and was seated in chair #4. After I introduced myself I asked Mr. Womack if what he had stated in an earlier affidavit regarding Tony Gaskins was indeed true. Without hesitation Mr. Womack said, " Absolutely,100%--the truth."

Mr. Womack then went on to tell me more about the circumstances surrounding the "deal" which was negotiated between himself and District Attorney Whitehead. Mr. Womack indicated to me that Attorney Whitehead threatened him into lying on the stand. Mr. Womack then told me that he was young at the time, terrified, and felt that if he followed Whitehead's direction, he would then be able to go home.

Mr. Womack then told me a number times, over the course of the hour [+] visit that he has lived with the guilt of putting Mr. Gaskins away. He then said again, " I was scared and just wanted to go home. I didn't kill anyone and neither did Tony. This whole thing has been a nightmare. Whitehead intimidated me."

As I stated, I spent over an hour with Mr. Womack. It appeared to me as if he was still in fear of Whitehead due to the fact that he questioned me as to if he would get more time if he finally told the truth.

Susan Bridget Manning

*Susan B. Manning*

11 Channel Street
Mattapoisett, Ma. 02739

A00035

## AFFIDAVIT OF SINDEY A. HAYES

I, Sindey A. Hayes, hereby depose and state the following to be true, that:

1.) I am the sister of Tony Gaskins.

2.) I went to visit Leo Womack while he was incarcerated at M.C.I. Concord Farm, Minimum Security Prison.

3.) Upon my visit, Leo and I had a discussion pertaining to my brother.

4.) I had asked Mr. Womack if he was willing to do the right thing by telling the truth about my brother, and was he willing to do so by affidavit. He said yes.

5.) He was very nice and receptive of me.

6.) He went on to tell me that the District Attorney, Mr. Whitehead did coerce him to lie against my brother. I was very disturbed at what he was telling me.

7.) I never put any words in Mr. Womack's mouth. And I would never lie for my brother because I believe in the law.

8.) He gave me this information on his own free will. He told me that he has been bothered by this for quite some time now.

9.) I will testify to these truths in any court of law.

Signed on this 20th day of _____ ,2000,under the pains and penalties of perjury.

Affiant,

Sindey A. Hayes
Sindey A. Hayes