# EXHIBIT B

A00037

COMMONWEALTH OF MASSACHUSETTS

ESSEX, SS.                          SUPERIOR COURT
                                    CRIMINAL NO:91-CR-018642

```
_____
                               )
COMMONWEALTH                   )
                               )
v.                             )
                               )
TONY GASKINS                   )
                               )
_____)
```

<u>MOTION FOR DISCOVERY PURSUANT TO</u>
<u>RULE 30(c) MASS. R. CRIM. P.</u>

The defendant, Tony Gaskins, moves pursuant to Rule
30(c)(4), Mass. R. Crim. P., for an order permitting discovery in
aid of the pending Motion For Release From Unlawful Restraint,
For New Trial, For Post-Trial Discovery and Hearings(hereinafter
"Motion for New Trial") and in support hereof states as follows:

1.   The Motion For New Trial establishes a prima facie case
for relief.  When such a prima facie case has been established
then discovery is appropriate pursuant to Rule 30(c)(4) Mass. R.
Crim. P.

2.   Procedurally, this case comes before this Court
following a Petition For Writ of Habeas Corpus that was pursued
in the United States District Court.  After a review of issues in
the federal case United States District Court Justice William G.
Young issued a decision noting that all state court issues had
not been exhausted.  Specifically, Judge Young noted that the
Affidavit of Leo Womack, Jr., "casts doubt on the fairness of
Gaskin's trial." See <u>Gaskins v. Duval</u>, U.S.D.C. No: 97-11540-WGY,
Memorandum and Order dated March 28, 2000, at p. 6.  A copy of

1

A0C038

this Memorandum is attached to the Memorandum of Law in Support of Motion For Release From Unlawful Restraint, as filed with this Court on April 1, 2000.   Judge Young also noted that the Womack Affidavit constituted evidence on "the issue of perjury and raises serious questions regarding prosecutorial misconduct." Id.

3.   Mr. Gaskins has taken such steps as are in his power to secure information in support of the Motion For New Trial, but the full grounds of the motion cannot be presented to this Court in the absence of Court ordered discovery.   It is anticipated that following access to discovery that the grounds for post-conviction relief would be even more compelling.

4.   While post-conviction motions have been filed in this case in the past, such previous motions were not supported by the same quantity of proof that has been submitted in support of this motion, and Mr. Gaskins has not previously had the opportunity to pursue post conviction relief with access to discovery pursuant to Rule 30(c)(4), Mass. R. Crim. P.

5.   It is submitted that it would be in the interests of justice to permit discovery, and that the Motion For New Trial, as filed, with supporting memoranda and affidavits, does establish a prima facie case for relief, thereby supporting this motion for discovery.

6.   For purposes of convenience, rather than filing an omnibus discovery motion, separate motions addressed to specific issues are submitted herewith, incorporating the grounds stated herein.

<div align="center">2</div>

7.    It is submitted that discovery is appropriate, and that the failure to permit discovery would deprive Mr. Gaskins of due process of law, to a fair trial, and to access to the Courts, in violation of the Fifth, Sixth and Fourteenth Amendments, to the United States Constitution, and Article 12 of the Declaration of Rights and the Constitution of the Commonwealth.

Respectfully submitted,
by the attorney for
Tony Gaskins,

John J. Barter
Attorney at Law
B.B.O. No: 032150
Third Floor
83 Atlantic Avenue
Boston, MA 02110
(617) 367-2545

October 25, 2000

## CERTIFICATE OF SERVICE

A copy of the above document was served by first class mail, postage pre-paid, on this day, upon the attorney for the Commonwealth:

Kevin Mitchell, ADA
Appellate Division
Essex County District
Attorney's Office
1 E. India Square
Salem, MA 01970

October 25, 2000

John J. Barter

3

A00040

COMMONWEALTH OF MASSACHUSETTS

ESSEX, SS.                                SUPERIOR COURT
                                          CRIMINAL NO:91-CR-018642

```
                              )
COMMONWEALTH                  )
                              )
v.                            )
                              )
TONY GASKINS                  )
                              )
```

## MOTION FOR DISCLOSURE OF PROMISES INDUCEMENTS AND REWARDS

The defendant, Tony Gaskins, moves this Court for an Order requiring the Commonwealth to disclose all incentives, promises, inducements, and rewards that were offered or provided to, any person, including any percipient witness, trial witness, potential witness, or other person having knowledge of the facts in the above alleged case, and in support hereof states as follows:

1. It appears from the record that the Commonwealth's two chief witnesses in this case, Leo Womack and Raymond Coffill, provided testimony for the Commonwealth in this case. It appears that these witnesses did not go to trial for murder, but instead were sentenced on lesser charges and sentenced to prison for terms of years.

2. As a result of the allegations in the Affidavit of Leo Womack, there is cause to believe that Mr. Womack, and possibly other witnesses, were provided with incentive to provide certain testimony.

1

A00641

3.    It would be appropriate to require the Commonwealth to fully disclose all discussions, negotiations, letter agreements, and representations that were made to any witnesses, or potential witnesses in this case, including any discussions or representations by police officers, district attorneys or other representatives of the Commonwealth to any witness, or any representative of any witness.

4.    The grounds asserted in the Motion for Discovery Pursuant To Rule 30(c) Mass. R. Crim. P., are incorporated herein by reference.

                          Respectfully submitted,
                          by the attorney for
                          Tony Gaskins,

                          John J. Barter
                          Attorney at Law
                          B.B.O. No: 032150
                          Third Floor
                          83 Atlantic Avenue
                          Boston, MA 02110
October 25, 2000          (617) 367-2545


                    CERTIFICATE OF SERVICE

    A copy of the above document was served by first class mail, postage pre-paid, on this day, upon the attorney for the Commonwealth:

        Kevin Mitchell, ADA
        Appellate Division
        Essex County District
        Attorney's Office
        1 E. India Square
        Salem, MA 01970

October 25, 2000          John J. Barter


                          2

                    A00042

COMMONWEALTH OF MASSACHUSETTS

ESSEX, SS.                                          SUPERIOR COURT
                                                    CRIMINAL NO:91-CR-018642


```
_____  )
                             )
COMMONWEALTH                 )
                             )
v.                           )
                             )
TONY GASKINS                 )
_____  )
```

## MOTION FOR ORDER REQUIRING
## DISCLOSURE OF MEDICAL RECORDS

The defendant, Tony Gaskins, moves This Court for an Order requiring the disclosure of copies of all medical records of David Clark, (d.o.b., 10/5/57) in the possession of Lynn Hospital, Lifeline Ambulance, Union Hospital, Atlanticare, and other medical personnel associated with such health care facilities, and in support hereof states as follows:

1.    In a Lynn Police Incident Report dated 2/16/91, it is reported that David Clark, the decedent, sought medical care on or about February 16, 1991.  That Police Report indicates that Mr. Clark reported that the cause of the puncture wound from which he was suffering was that he "fell on the bed" or "fell on his broken bed."  It appears that these statements may have been made to, or in the presence of medical personnel.  The Report indicates that Mr. Clark had contacts with each of these named medical institutions and with Lifeline Ambulance.  There is reason to believe that this account of how Mr. Clark sustained injury company, by falling on a broken bed, would be exculpatory to Mr. Gaskins.

1

A0C043

2.    Evidence that Mr. Clark suffered a puncture wound due to an accident is not only exculpatory to Mr. Gaskins, but also suggests that there may not have been any homicide at all.   In order to further investigate this actual innocence issue, Mr. Gaskins seeks access to such medical records of the decedent as may be in the care custody and control of the above named health care providers.

3.    The grounds asserted in the Motion for Discovery Pursuant To Rule 30(c) Mass. R. Crim. P., are incorporated herein by reference.

> Respectfully submitted,
> by the attorney for
> Tony Gaskins,
>
> John J. Barter
> Attorney at Law
> B.B.O. No: 032150
> Third Floor
> 83 Atlantic Avenue
> Boston, MA 02110
> (617) 367-2545

October 25, 2000

### CERTIFICATE OF SERVICE

A copy of the above document was served by first class mail, postage pre-paid, on this day, upon the attorney for the Commonwealth:

    Kevin M. Mitchell, ADA
    Appellate Division
    Essex County District
    Attorney's Office
    1 E. India Square
    Salem, MA 01970

October 25, 2000            John J. Barter

2

A 0 C 0 4 4

COMMONWEALTH OF MASSACHUSETTS
ESSEX, SS.                                    SUPERIOR COURT
                                             CRIMINAL NO:91-CR-018642

```
_____
                                )
COMMONWEALTH                    )
                                )
v.                              )
                                )
TONY GASKINS                    )
_____)
```

<u>MOTION FOR FUNDS FOR INVESTIGATOR</u>

The defendant, Tony Gaskins, moves This Court for an Order
authorizing $2,000 in funds for an investigator and in support
states as follows:

1.    In order to investigate and provide further support for
the grounds as asserted in the pending Motion For New Trial,
additional resources in the form of an investigator are
requested.

2.    Based upon a review of the record it appears that there
are witnesses who could provide exculpatory evidence, and who
could support certain grounds as asserted in the Motion For New
Trial.  The defendant seeks funds for an investigator to assist
in locating and interviewing such witnesses.

3.    The grounds asserted in the Motion for Discovery
Pursuant To Rule 30(c) Mass. R. Crim. P., are incorporated herein
by reference.

4.    It is submitted that it would be in the interests of
justice, due process of law, the right to a fair hearing, and the

1

A0C045

right to produce favorable proof, pursuant to the Fifth and Sixth

Amendments to the United States Constitution and Article 12 of

the Declaration of Rights, for this motion to be allowed.

                                        Respectfully submitted,
                                        by the attorney for
                                        (Troy Gaskins)

                                        John J. Barter
                                        Attorney at Law
                                        B.B.O. No: 032150
                                        Third Floor
                                        83 Atlantic Avenue
                                        Boston, MA 02110
October 25, 2000                        (617) 367-2545

                        CERTIFICATE OF SERVICE

    A copy of the above document was served by first class mail,
postage pre-paid, on this day, upon the attorney for the
Commonwealth:

        Kevin Mitchell, ADA
        Appellate Division
        Essex County District
        Attorney's Office
        1 E. India Square
        Salem, MA 01970

October 25, 2000                    John J. Barter

                                2

                            A 0 0 0 4 6

# EXHIBIT C

A00047

*Reed, Offell, Larkin, Wormack*    *J.H. Copy*

# LYNN POLICE INCIDENT REPORT

PAGE *1* OF *2*                                RPT: *91/296*

LOCATION OF INCIDENT: _FRANKLIN St / Boston St_

TYPE OF INCIDENT OR OFFENSE: _Stabbing_

DID THE INCIDENT INVOLVE DOMESTIC ABUSE AS DEFINED BY c209,s1A ? .......... YES [ ] NO [X]
DID THE INCIDENT INVOLVE ANY CIVIL RIGHTS ISSUES AS DEFINED BY c265,s37 ? .. YES [ ] NO [X]

| *2-16-91* | *0123* | *2-16-91* | FROM: | TO: |
| DATE REPORTED | TIME REPORTED | DATE OF INCIDENT | TIME OF INCIDENT | |

NAME OF BUSINESS: _N/A_                    TELEPHONE: _____

| | PARTICIPANTS NAME | TYPE | D.O.B. | SEX | RACE | ADDRESS | TELEPHONE |
|---|---|---|---|---|---|---|---|
| 1. | David Clark | V | 2-23-60 | M | B | 3 No. Common Ter. | 551-5581 |
| 2. | Daniel Harper | W | 10-5-57 | M | B | 187 Walnut Ave. Roxbury | 442-3813 |
| 3. | Bobby Byrd | W | 10-5-52 | M | B | 198 Locust St. Lynn | None |
| 4. | | | | | | 69 No. Common St #21 | None |
| 5. | Vivian Clark Avant | W | | F | B | 192 Franklin St. Lynn | 581-5518 |

RACE: W=WHITE B=BLACK O=ORIENTAL H=HISPANIC I=AMERICAN INDIAN
TYPE: O=OWNER(business) PR=PERSON REPORTING V=VICTIM S=SUSPECT D=DEFENDANT W=WITNESS

REPORT: On the above date at the above time, Car 10 was dispatched to the above address for an apparent stabbing.

We arrived at Lynn Hospital Emergency, Boston St. and D. Clark was already being treated inside Lifeline Ambulance. He had a puncture wound to his lower left quadrant and a contusion to his left eye area. He was taken to Union Hospital, Lynnfield St. by Lifeline Ambulance.

D. Clark related to off. Monahan while in the ambulance at Boston St. that he received the wound when he fell on his broken bed. He had a problem conversing due to the pain and/or a language barrier.

We obtained his name and other information from Union Hospital. He was being treated by Dr. Smith and Dr. Goldberg at Union Hosp. Sgt. Karuzis was notified and informed of the situation.

While at Union Hospital we spoke to both D. Harper and B. Byrd. D. Harper relates that he was walking to 192 Franklin St. to visit his cousin, D. Clark, when he saw him coming from the building. He said he had to go to the hospital so he and B. Byrd helped D. Clark to the emergency room and Atlanticare, Boston St. D. Harper relates that D. Clark told him he fell on the bed.

B. Byrd relates while walking on Franklin St. he saw D. Clark

REPORTING OFFICER: _MANNING_    PAYROLL: _6296_
SECOND OFFICER: _MONAHAN_    PAYROLL: _6343_
DIVISION SERGEANT: _Karuzis_    PAYROLL: _5605_

A00048

LYNN POLICE SUPPLEMENT REPORT

PAGE _2_ OF _2_

AND: 91 / 2963
YR. REPORT #

D. Clark
PARTICIPANTS NAME

ADDRESS
0123

Stabbing
TYPE OF INCIDENT OR OFFENSE

2-16-91
DATE OF INCIDENT

TO:    FROM:
TIME OF INCIDENT

and D. Harper in Front of 193 Franklin St. and went to help, then bringing D. Clark to the Emergency Room on Boston St. He relates that he has no idea what happened to D. Clark.

After cleaning Union Hospital, we went to 193 Franklin St. to talk to Vivian Avant. She relates that D. Clark came home complaining of stomach pain. He related to her that he was coming home from his Friends house on Boston St. and was jumped by five (5) males. One stabbed him, and one kicked him in the head. He then came home and confronted her.

The severity of the wound is unknown, at this time, although D. Clark was brought to the operating room. All of D. Clark's property is being held by Union Hospital, for safe keeping, at this time.

No other information to report, at this time.

Manning
REPORTING OFFICER
6-296
PAYROLL NO.

Monahan
SECOND OFFICER
6243
PAYROLL NO.

DIVISION SERGEANT
5665
PAYROLL NO.

COMPLAINANTS SIGNATURE

JUVENILE (IF INVOLVED)

PARENTS SIGNATURE

A00049



# NURSING ASSESSMENT

*admitted 2/16/0*

*(illegible addressograph stamp)*
*2/23/60 BOY*
*GOLDBERG, LARRY*
*INPATIENT-UNION*

**ADDRESSOGRAPH**

| Complete and send copy to Discharge Planner | | Date of Assessment | | Time 650A |
|---|---|---|---|---|

| Sex ☑ Male ☐ Female | Mode of Arrival | | | |
|---|---|---|---|---|
| | ☐ Ambulatory ☐ Wheelchair ☑ Stretcher *from OR* | | | |

| Vital Signs | B/P 110 BP *c depakek* | T ∠96 | P 96 | R 20 | Height | Weight | Recent Weight Change | Last M... |
|---|---|---|---|---|---|---|---|---|

| Disposition of Clothing | *(vent)* | Disposition of Valuables ? |
|---|---|---|
| ☐ Family ☐ Unit ☐ Other: | | ☐ Patient ☐ Family ☐ Cashier |

| Orientation To Unit: ☐ Yes ☐ No | Include: ☐ Bed ☐ Meals ☐ T.V. |
|---|---|

## HEALTH STATUS (See History Sheet for Family Medical History)

Patient's understanding of reason for admission — *unresponsive on arrival. (from OR)*

Symptoms and treatment before hospitalization *on admission to ER - pt said he felt like a kid & got stabbed*

## PATTERNS OF DAILY LIVING

| Diet ☐ Regular ☐ Special (Type): | Do you understand your diet? ☐ Yes ☐ No |
|---|---|
| Eating Habits Numbers of meals/day? | Assistance with meals? ☐ Yes ☐ No |
| Food Preparer? | Alcohol use? ☐ Yes ☐ No How Often? How Much? |
| Tobacco? ☐ Yes ☐ No | Type | How Much? | How Long? |
| Do you have a history of falling at home? ☐ Yes ☐ No | Purple Dot alert initiated* ☐ Yes ☐ No |

Medications currently taken at home! If yes, include dose and compliance, include over the counter, contraceptive pills, prescriptions
☐ Yes ☐ No
☐ Meds to Pharmacy

*? allergies*

| ALLERGY TO AND TYPE OF REACTION | ☐ Medications |
|---|---|
| | ☐ Food |
| | ☐ Other |

## HOME CARE STATUS

| ☐ M ☐ S ☐ W ☐ D ☐ Other: | Number of Children | Ages |
|---|---|---|

| Living with: | Family: | Living where: | Currently receiving services: |
|---|---|---|---|
| ☐ Family | ☐ In town | ☐ House | ☐ VNA |
| ☐ Alone | ☐ Out of town | ☐ Apartment | ☐ Home health aide |
| ☐ Other: | ☐ None | ☐ Other: | ☐ Meals on Wheels |
| | | | ☐ Adult day care |

| Do you have to climb stairs? ☐ Yes ☐ No | Do you have someone to assist you after discharge? ☐ Yes |
|---|---|

## ANTICIPATED DISCHARGE NEEDS

Teaching: ☐ Cardiac ☐ Diabetic ☐ Medication ☐ COPD ☐ Ostomy ☐ None ☐ Other:
Equipment: ☐ Ambulatory Aids & Safety Devices ☐ Oxygen ☐ Dressings/Supplies
☐ Other
May need assistance from: ☐ Family ☐ Visiting Nurse ☐ Social Worker ☐ Mobil Meals ☐ Homemaker/Home Health
☐ Hospice ☐ Other

*pt from OR p surgery & bleeding everywhere. vented, unresponsive,*
*(illegible) A000090 (illegible)*

*Exhibit C*

## Neuromuscular                              □ No Deficiency

- □ Incoordination
- □ Weakness ?
- □ Sensory Loss
- □ Paralysis
  - Where _____
- □ R.O.M. Loss
- □ Contractures
- □ Gait Impairments
- □ Joint-Muscle Pain
- □ P.E.R.L.
- □ More thorough assessment needed
  - Use Neuro Assessment sheet

- □ Regular Exercise Routine
- □ Seizures
- □ Stiffness
- □ Deformity

- □ Amputation

Explain _pt unresponsive @ arrival from ER,_ _____

## Respiratory                              □ No Deficiency

Rate _____
- □ Shallow
- □ Deep
- □ Regular
- □ Irregular
- □ Stridor
- □ Abnormal Breath Sounds
  - Describe _____

- □ S.O.B.
- □ Dyspnea
- □ Cyanosis
- □ Cough
- □ Productive   □ Non-productive
- □ Intubated

Explain _____

## Cardiovascular

- □ Radial Pulse Rate _____
- ☑ Regular
- □ Irregular
- □ Strong
- □ Thready
- ☑ Weak
- □ Apical Pulse Rate _____
- □ No Deficiency

- □ Chest Pain/Describe _____
- □ Chest Pain
- □ Edema
- □ Dizziness
- □ Hypertension
- □ Fainting
- □ Fatigue

□ Edema/Area _very edematous_

Extremities □ Cool _extremities ??_
            □ Warm     _mottled_
            □ Discolored

If alterations in extremity assessment, further assessment should include:

**Extremity Pulses**

|                  | R        | L        |
|------------------|----------|----------|
| Radial           | _____   | _____   |
| Dorsal Pedis     | _____   | _____   |
| Posterior Tibial | _____   | _____   |
| Brachial         | _____   | _____ _faint_ |

### SIGNIFICANT CURRENT MEDICAL HISTORY/HOSPITALIZATION

✗ on arrival to ER pt admitted to having aides.

✗ ? other Hx

### IDENTIFIED NURSING PROBLEMS

1. ↓AH cardiac output
2. Alt Eveles in consciousness
3. Potential for Alt in Nutrition

A00051

# EXHIBIT D

A0C052

LYNN POLICE DEPARTMENT

CRIMINAL INVESTIGATION DIVISION

DETECTIVE INVESTIGATION REPORTS


TO:         FILE

FROM:       CPL. DENNIS MARKS, MASS. STATE POLICE AND DET. LT. DENNIS FLYNN,

            LYNN POLICE, C.I.D.

DATE:       2/18/91

RE:         STABBING, FRANKLIN AND BOSTON STS., L.P.D. INCIDENT REPORT #91/2963

            DAVID CLARK, VICTIM

SUBJECT:    STATEMENT OF LEO J. WOMACK, JR., D.O.B. 4/15/70


Friday night (2/15/91), I was at my home, 355 Summer Street.  Around
10:00-10:30 P.M., I got a phone call from Ray Coffill. He said, "Are we gone to
do it tonight?" He meant the drug house on Boston St. and hit it.  I said,
"Come over and we'll talk about it." Five minutes later, Ray came over to my
house.  Ray mentioned other things besides Boston Street, when we could make
money like the drop at Papa Gino's or the drug house.  I said I didn't want to
do Papa Gino's.  Ray was driving a gray, Chevy Chevette.  Ray and I went to the
drug house (Boston St.)

I told Ray as we were driving by the drug house to go in and buy what
he wanted and pick me up at my mother's house on Carnes St.

Ray let me off at my mother's house and he left.  I was talking to my
mom, fifteen minutes later Ray came back to my mother's house and picked me up.
We went to Ray's house at 54 Light St., to do what he had.  He had a 20 of
cocaine. We smoked the 20 of cocaine, me, Ray and Ray's girlfriend.

I asked Ray to take me to my house for a minute.  We went into my
house (Summer St.).  My girlfriend said we needed food and diapers.  I called
the police station and asked for Ralph Strois.  They said he wasn't in but if I
came down they will page him in.  Ray drove me to Lynn P.D. and I met with Ralph

A00053

WOMACK--PAGE TWO

Sirois. Told him my family needed food and diapers. He gave me 10 dollars. I left and Ray and I went back to my house. I had the 10 dollars and a 14 karat gold charm. The charm said "Sexy" on it that I had bought from Linda's. Ray and I went to the drug house on Boston St. I gave Ray the 10 dollars and the charm. Ray went in. I sat in the car in the driveway. Ray went to the 1st floor back door.

In the hallway was Tony (Tony Gaskins) and Romeo (Robert Reid). They didn't give Ray anything for the 10 dollars and the charm. Ray told me this when he, Tony and Romeo came out. But they got a 20, because Tony and Romeo had pitched in one-half, 10 from Ray and 10 from Tony and Romeo.

Ray, Romeo and Tony got in the car and we all went to Ray's house (54 Light St.) All four of us smoked the #20.00 of cocaine.

While doing the 20, we started talking about kicking down the door at the drug house and robbing it. Romeo is saying, "Let's kick the drug dealer's door in and get their shit." I said I was game.

I told Ray and his girlfriend, I want to go to my house but I don't want Tony and Romeo to know where I live. I left Ray's house and I ran home.

I got a phone call from Ray. Ray said, "What you want to do?" I told him to come by alone and we will talk about it.

Romeo and Tony were in the car but Ray came up to my house by himself. Ray went out and brought Tony and Romeo up to my house.

At my house we talked about how we were going to hit the drug house. Ray said he would be the drive man. Tony and Romeo and I would hit the door.

We drove to the drug house. Ray parked his car on Barrett Street so he could see the porch. We, Rome Tony and I, went to the house, 1st floor in rear and went to the hallway door. We got in and knocked on the door. Tony stared to the drug dealers through the open door that the stuff we bought was no good. The Hispanic male said, "Nothing bad is sold here. The stuff is good,

Cpl DJM

A00054

WOMACK—PAGE THREE

you are just too high." Tony started yelling that the stuff was no good. "You better give me some coke." The Hispanic male got mad and told his buddy to get the machete in Spanish. He got the machete so we left. We stayed in the area. We stayed on the porch.

Three black guys came, two of them bought coke and then left. The third black bought some coke and came out to the porch saying, "I was only trying to get a play." (trying to get it free). He bought one and was trying to get another one free.

Before the black guy came out of the hallway onto the porch, Tony and I said, "Let's take his shit!" Tony grabbed the black guy from the side and I gave him a forearm in his jaw. The guy backed up toward the hallway yelling, "I swallowed it, leave me alone, please!" Tony grabbed him by his jacket, trying to pull him out of the hallway. The Hispanic males from the first floor drug house opened their door and came out. They shut the hallway door so nobody could go in. AT this time, the guy is standing on the porch. All the rest of us, me Tony and Romeo are standing on the pavement in front of the stairs. The guy is yelling to Romeo, "What's up, I swallowed it!" Romeo said, "Just kick it in." (Give it to them.) I said to Tony, "Just leave him alone and let's go" and Tony said, "I'm not leaving till I get something."

The guy came down the porch stairs and Tony grabbed him. The guy started fighting back. He pushed off Tony and ran forward and out onto Boston Street. Tony had run after him and caught him. The guy was fighting back. The guy fell on Boston Street. I went over and grabbed him by his foot and pulled him over near the curb. He kicked me and got up and ran down Boston St.

First Tony, then me, then Romeo began running after him. We told Ray to get into the car and chase him. Ray cut in front of him numerous amounts of time. The guy was still running.

The first time Ray tried to cut the guy off in the car he missed and

Cpl ____

WOMACK--PAGE FOUR

I told Romeo to get into the car to help Ray catch him.

The guy was still running up Boston St. The first time Ray pulled up beside him and cut him off the guy opened the passenger door. Ray said he reached under the seat. The guy said,"Oh shit!" and continued running up Boston St. The guy made it up to the street near the barber shop. (Congress St.) The guy hid in the back yard of a house on Congress St., near the barber shop. Rome and Tony went in the back yard and I went around to the next street. Ray was in the car parked beside the barber shop.

Romeo and Tony are in the back yard and you could hear the guy saying, "Romeo, I don't have it. Tell your boys to leave me alone." Then I couldn't hear the guy any more. I had come back around to Congress St.

Romeo and Tony came out of the driveway. Ray pulled up and we all got in the car. I was front passenger, Tony was rear, behind the driver and Romeo was behind me. We went driving around looking for the guy. I said, "Take me home." We drove around looking around for the guy.

We were on Western Avenue and Tony said, "I stabbed him." He said, "I think it was in the stomach." Romeo said to Tony, "See if there is any blood on the knife and wipe it off." I saw Tony take out the knife (buck knife) and wipe his finger across the knife to see if there was any blood on the blade. Ray took me home and they went to Ray's house.

THIS STATEMENT WAS GIVEN BY ME AFTER BEING ADVISED OF MIRANDA RIGHTS IN THE PRESENCE OF CPL. DENNIS MARKS AND LT. DENNIS FLYNN, ON 2/18/91, AT LYNN POLICE STATION. THIS STATEMENT IS GIVEN OF MY OWN FREE WILL.

A00055

LYNN POLICE DEPARTMENT

CRIMINAL INVESTIGATION DIVISION

DETECTIVE INVESTIGATING REPORTS


TO          FILE

FROM:       DETECTIVE LT. ROCCO PERLINO, C.I.D.

DATE:       2/16/91, 5:40 P.M.

RE:         STABBING, FRANKLIN & BOSTON STS., INCIDENT REPORT #91/2963

            DAVID CLARK, VICTIM

SUBJECT:    STATEMENT OF RAYMOND COFFILL.  ALSO PRESENT AT TIME OF STATEMENT,

            CAPTAIN JOSEPH COPPINGER, C.I.D.


On 2/16/91, at approx. 12:30 A.M., Myself and Leo Womack drove to
Boston St to buy some coke at a coke house. I went up to the house with $10.00
and a piece of gold to buy some coke. I went to the rear of the house but they
wouldn't sell me the coke because they didn't want the gold. Tony Gaskins and
Robert Reid were also at the house trying to buy some coke also. They had
$15.00 each and they wanted to buy some coke also but the guy wanted $20.00.
Robert Reid then says to me, "Hey, I know you, we did time together at D.Y.S."
I then remembered him. He then asked if I wanted to go half on a $20.00 bag and
I said "Yes." He then gave me $15.00 and I then slid $20.00 under the door.
The guy then slid the coke under the door to us. It's what is known as a knock
and slide. The three of us then leave the hall and agree to go to my house to
cook up the coke. We walked to my car where Leo Womack was and then we all
drove to my house.

        We all did the coke at my house and it wasn't any good. We all
talked about going back and robbing the coke house. We drove to the coke house
and Leo and Rome stayed in the car and myself and Tony go in and complain. The
guy wouldn't give me nothing. I then say, "Okay, I'm leaving" and I go back to
my car and tell Leo and Romeo to go in and I'll drive around the corner and wait


A00056

COFFILL—PAGE TWO

but they never go into the house.

They all came back to my car and we talked about it again and I drive back to try and rob them by forcing the back door. Then the guy came out with a machete and I decided to leave. I start to leave and then we all go back to the car.

We then talk about it again and get hyped up to go back and kick in the door and rob them. Then a black guy came by and knocked on the door and he told us to leave because the guy wouldn't open the door until we left. They guy opened the door and they did a deal. Then another guy, a black dude, came by and he wanted to make a buy also, who I now know as Dave. When he came they decided to rob him for his stuff. We were standing on the porch when Dave came out and they asked what he had and he said he had a twenty and Leo then said to him, "Will you know what happens now" and that's when Tony pulled out his knife and a fight started and Leo punched Dave in the head and Leo said, "Kick it in!" Tony then grabbed Dave and pinned Dave up against the wall and put the knife to his throat. I had left to go to my car. I then saw them run after Dave and I started the car and followed them down the street. Dave even tried to get into the passenger side and realized it was me and he said, "Oh shit!" and jumps from the car. They then chased him and lost him. Then they all got into my car and Tony said, "I got that nigger, he didn't make the fence. I stabbed him in the leg."

We drove around and I ended up dropping Romeo off at 127 Washington St. and Tony at the Highlands and Womack off at Summer St. and I went home.

"I have read the above statement and agree that the statement is a true statement given to Lt. Perlino."

(RAYMOND COFFILL)

A01057

COFFILL---PAGE THREE

On 2/16/91, Raymond Coffill informed me that when we originally arrived at 127 Washington St., Tony Gaskins was sitting with him in the apartment and he got up and took a buck knife out of a holder on his belt and put it in a kitchen drawer. I went over to the drawer and was contemplating taking the knife but decided to leave it. It was the knife used in the stabbing of Dave Clark.

(RAYMOND COFFILL)

EXHIBIT E

A00059

CONLON, SAMSON & CONLON
ATTORNEYS AT LAW
73 NORTH COMMON STREET
LYNN, MASSACHUSETTS 01902
(617) 581-5335
TELECOPIER. (617) 581-5551

HUGH W. SAMSON
ALBERT S. CONLON
DAVID A. CONLON

July 10, 1997

Tony B. Gaskins
MCI Cedar Junction
P.O. Box 100
South Walpole, MA 02971

Dear Mr. Gaskins:

In response to your June 19, 1997 letter, I do not know who told you that I am aware of the systematic exclusion of minorities in the jury pool is Essex County. I have no such knowledge. What I do know, and would be willing to state, is that in all the jury trials I have had in Newburyport, which is perhaps a dozen, there have only been a handful of blacks in the venire, and I do not believe I ever had a black survive the jury selection process.

As for your request that I undertake your representation, I could not do that at this time or for the foreseeable future.

Very truly yours,

Hugh W. Samson

HWS:ma

A00060

# Commonwealth of Massachusetts

ESSEX, to wit:

At the SUPERIOR COURT, begun and holden at Salem, ~~Lawrence, Newburyport~~ within and for said County of Essex, on the first Monday of      January      in the year of our Lord one thousand nine hundred and      ninety-one

THE JURORS for the Commonwealth of Massachusetts upon their oath present, that

Tony B. Gaskins

of Lynn                                    in said County of Essex,

on the or about February 16, ~~19~~XXXXXX ~~Day of~~

in the year of our Lord one thousand nine hundred and .ninety-one

at  Lynn                                              in the County of Essex aforesaid

did assault and beat David Clark with the intent to murder him and by such

assault and beating did kill and murder David Clark,

against the peace of the Commonwealth aforesaid, and contrary to the form of the statute in such case made and provided.

*Kevin M. Burke*                    A TRUE BILL:

*District Attorney*  A00061                              *Foreman of Grand Jury.*

ESSEX, SS. On this twelfth day of March in the year one thousand nine hundred and ninety-one this indictment was returned and presented to Said Superior Court, by the Grand Jury, and ordered to be filed.

and it is further ordered by the Court (Cratsley, J., J.) that the defendant be notified that the indictment will be entered forthwith on the docket of the Superior Court for the County of Essex.

ATTEST:

Assistant Clerk

Direct
Lynn

No. 018642

COMMONWEALTH

vs.

Tony B. Gaskins

Superior Court, March Term, 19 91

Murder
265-1

Essex, s.s. March 12, A. D. 1991

I have this day served the within named Tony B. Gaskins with a copy of the indictment charging him with the murder of David Clark together with a copy of an order of the Court that the indictment will be entered forthwith upon the docket of the Superior Court for Essex County by giving to him in hand a true copy of the indictment and Order of the Court.

~~Sheriff of Essex County~~

A00062

# Commonwealth of Massachusetts

## THE TRIAL COURT

_Essex_ : COUNTY

LOCATION: _Newburyport_                     SESSION: _Felony_

Superior ☐    District ☐                     Civil ☒    Criminal ☒

JUDGE: _John L. Murphy, Jr._        _Harry McKenna_

CASE TRIAL NUMBER: _18642_        COURT REPORTER

_____ v. _____

COMMONWEALTH
vs.

PANEL NUMBER: _1.35_        _Tony Haskins_

Court  Month  Day  No.

| JUROR'S I.D. NUMBER | | | NAME OF IMPANELLED JUROR | |
|---|---|---|---|---|
| 92 - | 023047 | -05- A2 | Brian Porter | |
| 91 - | 108401 | -05- 79 | Cindy J. Foucault | |
| 92 - | 023058 | -05- 53 | Donald Amato | |
| 91 - | 139374 | -05- 43 | Edmund McGrath | |
| 92 - | 023079 | -05- C2 | Suzanne Peters | |
| 91 - | 021971 | -05- E0 | Georgia Nichols | |
| 91 - | 056195 | -05- C5 | Anne Arsenault | |
| 92 - | 015656 | -05- 97 | Michael J. Jacobsen | F |
| 92 - | 023115 | -05- 85 | Andrew Orlando | |
| 91 - | 050336 | -05- E6 | Richard DiBlasic | A |
| 92 - | 016236 | -05- 17 | Melinda Carey | |
| 92 - | 016871 | -05- EE | Sherri A. Godfrey | A |
| 92 - | 016945 | -05- 8A | David Lee | |
| 92 - | 023161 | -05- A9 | Thomas Foley | |

_John P. Greenler_        2/25/92

Signature of Assistant Clerk    A00063    Date

TO BE FILED WITH CASE PAPERS

COMMONWEALTH OF MASSACHUSETTS

ESSEX, SS.                    SUPERIOR COURT
                              DOCKET NO:  18642

COMMONWEALTH                  )
                              )
VS.                           )
                              )
TONY B. GASKINS               )

## MOTION FOR INDIVIDUAL VOIR DIRE OF JURY

Now comes the defendant in the above-entitled case and requests this Court allow an individual voir dire of the jury as the impaneling takes place. As reasons therefore, the defendant states that he is concerned about any bias or prejudice in the jury selection as this case involves the sale and purchase of an illegal narcotic substance (cocaine), armed robbery and murder on the streets of the City of Lynn, Massaachusetts.

                          TONY B. GASKINS,
                          By his attorney,


                          Michael P. Hickey
                          MICHAEL P. HICKEY
                          Six Lynde Street
                          Salem, MA  01970
                          (617) 745-4444

A00064

COMMONWEALTH OF MASSACHUSETTS

ESSEX, SS.                      SUPERIOR COURT
                                DOCKET NO:  18642

COMMONWEALTH                    )
                                )
VS.                             )
                                )
TONY B. GASKINS                 )

### DEFENDANT'S MOTION TO ADDITIONAL PREEMPTORY CHALLENGES OF THE JURY VENIRE

    Now comes the defendant in this case and requests
this Court allow him six additional preemptory
challenges of this jury venire.

    As reasons therefore, he states that this
indictment allege the murder of David Clark.  The
defendant states these additional challenges are
necessary for a fair trial.

                        TONY GASKINS,
                        By his attorney,


                        _Michael P. Hickey_
                        MICHAEL P. HICKEY
                        Six Lynde Street
                        Salem, MA  01970
                        (617) 745-4444

A00065

COMMONWEALTH OF MASSACHUSETTS

ESSEX. SS.                    SUPERIOR COURT
                             DOCKET NO:   18642

COMMONWEALTH                 )
                             )
VS.                          )
                             )
TONY GASKINS                 )

REQUEST FOR VOIR DIRE OF PROSPECTIVE JURORS

Now comes the defendant in the above matter and
requests that the following questions be asked of
prospective jurors pursuant to Massachusetts General
Laws, Ch. 234, Sec. 28.

1.  Are you aware of any reason which would
prevent you from serving, or make it difficult for
your to sit on the jury in this case?

2.  Are you acquainted with Tony Gaskins, the
defendant in this case?

3.  Have you ever been a victim of assault or
assault and battery with or without a weapon?

4.  If so, would this fact make it difficult
for you to decide this case based upon the evidence
alone?

5.  Have you or any member of you family or
close friend ever been the victim of an assault, an
assault and battery with or without a weapon,
manslaughter or murder?

6.  If so, would this fact make it difficult
for your to decide this case based upon the
evidence?

- 1 -

A00066

7.   Has any member of your immediate family or a close personal friend ever been the victim of an assault or robbery with or without a weapon?

8.   If so, would this fact make it difficult for you to decide this case based upon the evidence alone?

9.   Have you ever been the victim of a burglary/breaking and entering into your home?

10. If so, would this fact make it difficult for you to decide this case based upon the evidence?

11. Have you or any member of your family or close friend ever been the victim  of burglary/breaking and entering into your home?

12.  If so, would this fact make it difficult for you to decide this case based upon the evidence?

13. Have you or any member of your family or close friend ever been the victim of a violent crime?

14.  If so, would this fact make it difficult for you to decide this case based upon the evidence?

15.  Can you accept the proposition of law that a defendant is presumed innocent, has no burden to establish his innocence, and is clothed throughout the trial with this proposition?

16.  Would the fact that the defendant was arrested in this case interfere with your ability to presume he is innocent?

17.  Do  you feel that since the defendant has been arrested that he is, therefore, probably guilty?

18.  During  deliberation, if you have formed an opinion, would you keep an open mind and listen to the opinion of others?

19.. If other jurors were of a different opinion than you, would you be willing to change your opinion to conform to theirs?

- 2 -

A00067

20.  If you come to the conclusion that the prosecution had not proven the guilt of the accused beyond a reasonable doubt, and you found that a majority of the jurors believed the defendant was guilty, would you change your verdict only because you were in the minority?

21.  If the defendant were to testify, would you give his testimony the same weight and credit that you would give to other witnesses?

22.  During the trial of this case, it is expected that there will be explicit testimony about the use of weapons, namely a knife.

23.  If so, would testimony about the use of such a weapon make it difficult for you to decide this case based upon all the evidence?

24.  Would you be able to fairly and impartially decide this case solely on the evidence presented, if the defendant is a Black man?

25.  Do you feel you would have any racial prejudice against the Black male?

26.  Do you believe you could impartially decide the guilt or innocence of this defendant when the government alleges this crime of murder was committed by a Black male?

27.  Are you or any members of your immediate family or close friends employed presently, or have been in the past, in any law enforcement agency, including police, federal agents, and prosecutors?

28.  Is there anything about the nature of the charge that would make it difficult for you to render a fair and impartial verdict?

29.  Would you believe the testimony of a police officer over that of a citizen just because he is a police officer?

30.  During the trial of this case, it is expected that there will be explicit testimony about injuries received by David Clark.

31.  If so, would testimony about such injuries make it difficult for you to decide this case based upon all the evidence?

- 3 -

A00068

32.  During the trial of this case, it is expected that there will be photographs of David Clark's body depicting his injury.

33.  If so, would testimony about such injuries make it difficult for you to decide this case based upon all the evidence?

34.  Do you have any strong feelings on the issue of the treatment of crimes of violence by either the police or criminal courts which might affect your judgment in this case?

35.  Have you or any member of your family or close friends, ever been employed by any agency or organization which works with or on behalf of victims of crimes of a violent nature?

36.  Other than being a member of this jury pool, have you ever sat as a juror within the last 10 years?

37.  It is expected there will be testimony about the voluntary ingestion of illegal narcotic drugs by the defendant.  Would your opposition to the illegal narcotic drugs interfere with your ability to render a fair and impartial verdict?

38.  It is expected that there will be testimony that the defendant's voluntary ingestion of illegal narcotic drugs diminished his responsibility in committing the crime of murder in the first degree.

TONY GASKINS,
By his attorney,

*Michael P. Hickey*

MICHAEL P. HICKEY
Six Lynde Street
Salem, MA  01970
(508) 745-4444

- 4 -

A00069

## Table 54. Age and Sex by Race and Hispanic Origin: 1990—Con.

[Threshold and complementary threshold are 400 persons. For definitions of terms and meanings of symbols, see text]

| County | Dukes County All persons | Dukes White | Essex All persons | Essex White | Essex Black | Essex American Indian, Eskimo, or Aleut | Essex Asian or Pacific Islander | Essex Hispanic origin (of any race) | Essex White, not of Hispanic origin |
|---|---|---|---|---|---|---|---|---|---|
| **All persons** | 11 639 | 10 979 | 670 080 | 616 427 | 15 809 | 1 226 | 9 909 | 48 440 | 600 518 |
| Under 5 years | 826 | 788 | 48 777 | 41 680 | 1 972 | 113 | 1 116 | 6 579 | 39 680 |
| Under 1 year | 119 | 110 | 8 573 | 7 344 | 348 | 19 | 180 | 1 159 | 6 983 |
| 1 year | 200 | 184 | 10 696 | 9 078 | 480 | 26 | 243 | 1 432 | 8 655 |
| 2 years | 197 | 194 | 10 179 | 8 655 | 401 | 21 | 252 | 1 415 | 8 220 |
| 3 years | 168 | 164 | 9 655 | 8 295 | 367 | 21 | 214 | 1 276 | 7 904 |
| 4 years | 142 | 136 | 9 674 | 8 308 | 376 | 26 | 227 | 1 247 | 7 918 |
| 5 to 9 years | 813 | 764 | 44 810 | 38 550 | 1 564 | 114 | 1 163 | 5 845 | 36 747 |
| 5 years | 191 | 179 | 9 501 | 8 184 | 333 | 27 | 240 | 1 221 | 7 812 |
| 6 years | 163 | 158 | 9 090 | 7 827 | 328 | 27 | 217 | 1 187 | 7 454 |
| 7 years | 160 | 147 | 8 841 | 7 626 | 284 | 20 | 234 | 1 106 | 7 315 |
| 8 years | 147 | 139 | 8 594 | 7 363 | 308 | 21 | 228 | 1 178 | 6 995 |
| 9 years | 152 | 141 | 8 784 | 7 550 | 311 | 19 | 244 | 1 153 | 7 171 |
| 10 to 14 years | 678 | 635 | 40 500 | 35 113 | 1 397 | 129 | 915 | 5 208 | 33 395 |
| 10 years | 158 | 149 | 8 628 | 7 461 | 281 | 24 | 218 | 1 100 | 7 100 |
| 11 years | 126 | 122 | 8 226 | 7 119 | 310 | 29 | 180 | 1 079 | 6 753 |
| 12 years | 127 | 119 | 8 126 | 7 114 | 278 | 27 | 164 | 1 032 | 6 750 |
| 13 years | 135 | 119 | 7 744 | 6 705 | 250 | 30 | 172 | 1 012 | 6 386 |
| 14 years | 132 | 126 | 7 776 | 6 714 | 278 | 19 | 181 | 985 | 6 406 |
| 15 to 19 years | 562 | 506 | 42 863 | 37 725 | 1 433 | 111 | 887 | 4 725 | 36 294 |
| 15 years | 129 | 118 | 7 944 | 6 917 | 283 | 20 | 199 | 950 | 6 602 |
| 16 years | 135 | 128 | 7 992 | 7 049 | 255 | 16 | 149 | 916 | 6 763 |
| 17 years | 123 | 108 | 8 554 | 7 517 | 289 | 30 | 186 | 945 | 7 227 |
| 18 years | 90 | 78 | 8 792 | 7 741 | 292 | 20 | 169 | 961 | 7 469 |
| 19 years | 85 | 74 | 9 581 | 8 501 | 314 | 25 | 184 | 953 | 8 233 |
| 20 to 24 years | 512 | 470 | 47 635 | 42 575 | 1 553 | 109 | 710 | 4 614 | 41 228 |
| 20 years | 112 | 105 | 9 623 | 8 533 | 308 | 23 | 158 | 983 | 8 271 |
| 21 years | 99 | 91 | 9 262 | 8 335 | 307 | 20 | 125 | 822 | 8 108 |
| 22 to 24 years | 301 | 274 | 28 750 | 25 707 | 938 | 66 | 427 | 2 809 | 24 849 |
| 25 to 29 years | 808 | 758 | 56 995 | 51 760 | 1 676 | 93 | 817 | 4 789 | 50 243 |
| 30 to 34 years | 1 104 | 1 051 | 59 858 | 54 797 | 1 522 | 93 | 1 033 | 4 426 | 53 366 |
| 35 to 39 years | 1 207 | 1 154 | 54 981 | 50 797 | 1 309 | 120 | 909 | 3 548 | 49 613 |
| 40 to 44 years | 1 138 | 1 094 | 50 391 | 47 282 | 922 | 103 | 764 | 2 578 | 46 567 |
| 45 to 49 years | 673 | 643 | 39 228 | 37 014 | 675 | 64 | 514 | 1 892 | 36 349 |
| 50 to 54 years | 434 | 421 | 30 070 | 28 535 | 483 | 51 | 324 | 1 315 | 28 059 |
| 55 to 59 years | 493 | 469 | 29 432 | 28 415 | 333 | 35 | 239 | 904 | 28 045 |
| 60 to 64 years | 558 | 524 | 29 866 | 29 076 | 302 | 25 | 179 | 673 | 28 781 |
| 65 to 69 years | 608 | 568 | 28 730 | 28 073 | 256 | 23 | 166 | 515 | 27 627 |
| 70 to 74 years | 453 | 427 | 24 307 | 23 904 | 179 | 11 | 77 | 374 | 23 704 |
| 75 to 79 years | 333 | 306 | 18 546 | 18 328 | 99 | 13 | 57 | 253 | 18 164 |
| 80 to 84 years | 244 | 219 | 12 423 | 12 266 | 75 | 17 | 24 | 158 | 12 167 |
| 85 years and over | 195 | 180 | 10 650 | 10 557 | 49 | 7 | 15 | 94 | 10 489 |
| 18 years and over | 8 935 | 8 438 | 511 523 | 479 601 | 10 049 | 804 | 6 181 | 28 047 | 470 104 |
| 62 years and over | 2 158 | 2 001 | 112 720 | 110 701 | 825 | 79 | 626 | 1 775 | 109 782 |
| 65 years and over | 1 833 | 1 707 | 94 674 | 93 108 | 658 | 66 | 339 | 1 394 | 92 351 |
| Median age | 37 3 | 37 3 | 34 4 | 35.5 | 25.0 | 26 8 | 26 0 | 22 1 | 35.9 |
| **Female** | 5 991 | 5 661 | 350 549 | 322 649 | 7 910 | 615 | 5 142 | 24 905 | 314 504 |
| Under 5 years | 385 | 373 | 23 655 | 20 211 | 934 | 48 | 566 | 3 102 | 19 281 |
| Under 1 year | 46 | 43 | 4 159 | 3 563 | 162 | 9 | 87 | 541 | 3 412 |
| 1 year | 88 | 84 | 5 127 | 4 315 | 252 | 9 | 123 | 680 | 4 122 |
| 2 years | 107 | 105 | 5 002 | 4 262 | 189 | 8 | 135 | 675 | 4 054 |
| 3 years | 82 | 80 | 4 774 | 4 133 | 160 | 10 | 105 | 614 | 3 941 |
| 4 years | 62 | 61 | 4 593 | 3 938 | 171 | 12 | 116 | 592 | 3 752 |
| 5 to 9 years | 410 | 389 | 21 833 | 18 755 | 788 | 50 | 568 | 2 820 | 17 923 |
| 5 years | 98 | 94 | 4 635 | 3 995 | 161 | 13 | 112 | 608 | 3 801 |
| 6 years | 83 | 81 | 4 483 | 3 831 | 174 | 9 | 113 | 595 | 3 665 |
| 7 years | 80 | 74 | 4 256 | 3 675 | 141 | 4 | 117 | 519 | 3 533 |
| 8 years | 67 | 65 | 4 121 | 3 508 | 151 | 11 | 116 | 551 | 3 355 |
| 9 years | 82 | 75 | 4 338 | 3 746 | 161 | 9 | 110 | 547 | 3 569 |
| 10 to 14 years | 320 | 298 | 19 630 | 16 989 | 691 | 70 | 478 | 2 535 | 16 143 |
| 10 years | 76 | 73 | 4 251 | 3 668 | 135 | 13 | 115 | 560 | 3 478 |
| 11 years | 64 | 61 | 4 008 | 3 477 | 152 | 14 | 89 | 533 | 3 293 |
| 12 years | 56 | 53 | 3 901 | 3 417 | 141 | 14 | 88 | 481 | 3 237 |
| 13 years | 61 | 52 | 3 729 | 3 219 | 126 | 14 | 90 | 480 | 3 080 |
| 14 years | 63 | 62 | 3 741 | 3 206 | 136 | 16 | 96 | 489 | 3 055 |
| 15 to 19 years | 290 | 261 | 21 381 | 18 758 | 710 | 53 | 461 | 2 382 | 18 069 |
| 15 years | 65 | 59 | 3 898 | 3 366 | 137 | 10 | 93 | 463 | 3 221 |
| 16 years | 73 | 69 | 3 859 | 3 413 | 121 | 5 | 64 | 449 | 3 270 |
| 17 years | 61 | 57 | 4 166 | 3 659 | 138 | 17 | 88 | 456 | 3 531 |
| 18 years | 38 | 33 | 4 480 | 3 928 | 145 | 11 | 90 | 496 | 3 797 |
| 19 years | 45 | 39 | 4 978 | 4 392 | 169 | 10 | 107 | 505 | 4 250 |
| 20 to 24 years | 249 | 234 | 24 203 | 21 577 | 757 | 54 | 368 | 2 453 | 20 845 |
| 20 years | 44 | 43 | 4 949 | 4 390 | 135 | 13 | 93 | 501 | 4 254 |
| 21 years | 48 | 37 | 4 784 | 4 277 | 171 | 13 | 70 | 435 | 4 162 |
| 22 to 24 years | 157 | 154 | 14 470 | 12 910 | 451 | 28 | 205 | 1 517 | 12 429 |
| 25 to 29 years | 399 | 378 | 28 933 | 26 185 | 847 | 41 | 429 | 2 547 | 25 379 |
| 30 to 34 years | 558 | 536 | 30 707 | 28 063 | 740 | 63 | 551 | 2 384 | 27 281 |
| 35 to 39 years | 623 | 598 | 28 116 | 25 951 | 638 | 65 | 481 | 1 864 | 25 301 |
| 40 to 44 years | 548 | 520 | 25 972 | 24 336 | 461 | 63 | 404 | 1 375 | 23 857 |
| 45 to 49 years | 315 | 297 | 19 955 | 18 809 | 336 | 30 | 243 | 1 016 | 18 474 |
| 50 to 54 years | 229 | 222 | 15 549 | 14 757 | 248 | 19 | 168 | 715 | 14 493 |
| 55 to 59 years | 237 | 227 | 15 247 | 14 714 | 195 | 19 | 130 | 459 | 14 528 |
| 60 to 64 years | 330 | 320 | 16 067 | 15 611 | 172 | 12 | 101 | 377 | 15 456 |
| 65 to 69 years | 337 | 314 | 16 109 | 15 709 | 148 | 13 | 90 | 311 | 15 561 |
| 70 to 74 years | 261 | 243 | 14 338 | 14 101 | 108 | 6 | 41 | 234 | 13 970 |
| 75 to 79 years | 204 | 184 | 11 823 | 11 666 | 59 | 8 | 34 | 151 | 11 583 |
| 80 to 84 years | 151 | 134 | 8 519 | 8 417 | 56 | 5 | 7 | 100 | 8 348 |
| 85 years and over | 145 | 133 | 8 125 | 8 060 | 42 | 4 | 9 | 60 | 8 012 |
| 18 years and over | 4 669 | 4 412 | 273 108 | 256 276 | 5 101 | 415 | 3 767 | 15 067 | 251 135 |
| 62 years and over | 1 269 | 1 190 | 68 716 | 67 505 | 512 | 44 | 255 | 1 076 | 66 938 |
| 65 years and over | 1 098 | 1 008 | 58 901 | 57 953 | 413 | 38 | 195 | 856 | 57 474 |
| Median age | 38 2 | 38 1 | 35.8 | 37.0 | 25.5 | 28.9 | 26.4 | 23 4 | 37 4 |
| **Male** | | | | | | | | | |
| Median age | 36 3 | 36 6 | 33.0 | 34.1 | 24.5 | 25.3 | 25.4 | 20 6 | 34 4 |
| Males per 100 females | 94 3 | 93 9 | 91 4 | 91 0 | 99 9 | 99 3 | 92 7 | 94 5 | 90 9 |

SUMMARY POPULATION AND HOUSING CHARACTERISTICS

MASSACHUSETTS   19

## Table 3. Sex, Race, and Hispanic Origin: 1990—Con.

[For definitions of terms and meanings of symbols, see text]

COMMONWEALTH OF MASSACHUSETTS

ESSEX, SS.                          SUPERIOR COURT DEPARTMENT
                                    CRIMINAL NO. 18642

COMMONWEALTH

V.

TONY GASKINS

<u>AFFIDAVIT</u>

I, Michael P. Hickey, hereby depose and state as

follows:

1.    I am a criminal defense attorney practicing in the

City of Salem.

2.    I have been involved in the practice of criminal

law since 1977.

3.    During my nearly twenty (20) years as an attorney,

I have prosecuted and defended in numerous murder cases.

4.    I represented Tony Gaskins during the pendency of

his murder indictment no. 018642.

5.    At the time of impanellment, I asked for an

individual voir dire of jurors and for additional peremptory

challenges in attempt to assure the defendant, a Black man,

a fair trial; although the victim was also black, one of the

testifying co-defendants, Raymond Coffill, is Caucasian.

A00072

2

6.   In my judgment, race could have been a factor in this case.

7.   Both requests were denied.

8.   I did not use all peremptory challenges.

9.   The defendant was satisfied with my requests.

10.  The defendant did not tell me to further pursue the possible race issue.

11.  In my judgment, I had done all that was necessary on the potential race issue.

12.  I never told the defendant that I did not want to further pursue this matter.

Signed under the penalties of perjury this 29th day of April, 1997.

FOR THE COMMONWEALTH:

MICHAEL P. HICKEY

A00073

# OFFICE OF JURY COMMISSIONER
## *for The Commonwealth*

May 28, 1997

Tony B. Gaskins
P.O. Box 100
So. Walpole, MA 02071

Dear Sir:

In response to your letter of May 13, 1997, please be advised that our records are kept for 3 years only. Therefore, we cannot be of assistance to you as regards the records from 1990, or those from 1987-1991.

Incidentally, the data we receive and keep for three years for each individual named is name, address, date of birth, gender and occupation. Our records did not reflect voter status or race/ethnicity.

To explain how we select and process jurors in a letter would take forever. Please read M.G.L. c234A. That is the current jury statue and is what we follow.

Office of Jury Commissioner

A00074

560 HARRISON AVENUE - SUITE 600
BOSTON, MASSACHUSETTS 02118-2447

(617) 422-5860
FAX (617) 422-5869

MASXP-2C050621

# Commonwealth of Massachusetts
### ESSEX SUPERIOR COURT
#### Case Summary
#### Criminal Docket

09/06/2005
02:40 PM

## ESCR1991-18642
## Commonwealth v Gaskins, Tony B.

| | | | |
|---|---|---|---|
| **File Date** | 03/12/1991 | **Status** | Disposed (appeal pending) (dappen) |
| **Status Date** | 02/20/2003 | **Session** | 1 - CtRm 1 (Salem) |
| **Jury Trial** | Unknown | **Origin** | I - Indictment |
| **Lead Case** | | | |

### OFFENSES

| Num | Offense | Code | Status | Status Date |
|---|---|---|---|---|
| 1 | 02/16/1991 Murder | 265:001.0 | Guilty verdict | 02/28/1992 |

### PARTIES

**Plaintiff**
Commonwealth
Gender: Unknown
Active 03/12/1991

**District Atty's Office 349880**
Kevin M Mitchell
111 Everett Ave
Suite 2A
Chelsea, MA 02150
Phone: 617-884-6480
Fax: 617-884-6524
Active 07/16/2003 Notify

**Defendant**
Tony B. Gaskins
M.C.I. Cedar Junction
P.O. Box 100
South Walpole, MA 02071
Gender: Unknown
Active 03/12/1991

**Private Counsel 032150**
John J Barter
83 Atlantic Avenue
3rd floor
Boston, MA 02110-3711
Phone: 617-367-2545
Fax: 617-523-7554
Active 07/16/2003 Notify

**Witness**
Robert Sean Reid
Old Colony Correctional Center
Gender: Male
DOB:02/17/68 W-68550
Active 12/06/2002

**Private Counsel 565903**
David L Larsen
O'Donovan Lyons & O'Donovan
741 Broadway
Ball Square
Somerville, MA 02144
Phone: 617-629-8888
Fax: 617-623-7990
Active 07/16/2003 Notify

**Witness**
Leo Womack
Gender: Unknown
Active 07/16/2003

**Private Counsel 600354**
Chauncey B Wood
47 Third Street
Suite 201
Cambridge, MA 02141
Phone: 617-577-8722
Fax:
Active 07/16/2003 Notify

case01 202014 y y y y y y y

A00075

MASXP-20050621

**Commonwealth of Massachusetts**
ESSEX SUPERIOR COURT
**Case Summary**
**Criminal Docket**

09/06/2005
02:40 PM

# ESCR1991-18642
## Commonwealth v Gaskins, Tony B.

### ENTRIES

| Date | Paper | Text |
|------|-------|------|
| 03/12/1991 | 1.0 | Indictment returned |
| 02/28/1992 | | RE Offense 1:Guilty verdict |
| 10/26/2000 | | Continued until 12/14/2000 for status and counsel for defendant to file motions on 12/8/00. Borenstein, J., presiding; M. Hezekiah, Court Reporter. |
| 12/08/2000 | 88.0 | Motion for Writ of Habaes Corpus Ad -Testificandum: Filed |
| 01/23/2001 | 88.1 | Supplemental memorandum in support of Post-Conviction motions: Filed |
| 03/19/2001 | 88.2 | [Substitute Supplemental Memorandum in Support of Post -Conviction Motion |
| 04/11/2001 | 89.0 | Defendant's Motion for an expedited setting of an evidentiary hearing date: Filed |
| 05/08/2001 | 90.0 | Commonwealth files memorandum in opposition to defendant's request for an evidentiry hearing regarding post-conviction motions. |
| 05/08/2001 | 91.0 | Affidavit of Howard Whitehead: Filed |
| 05/08/2001 | 92.0 | Affidavit of Kevin Mitchell: Filed |
| 05/29/2001 | 93.0 | Motion for wit of Habeas Corpus Ad-Testificandum: Filed |
| 06/01/2001 | 94.0 | Motion for new trial by Deft on June 14, 2001, at 9:00A.M. Sharp in Judge Borenstein's session in Salem Superior Court. Requested by:Shirley Cahill, District Attorney's Office |
| 02/13/2002 | 95.0 | Motion for leave to supplement argument: Filed |
| 07/12/2002 | 96.0 | Memorandum of Decision & Order of Defendant's Motion for New Trial: Denied (See Endorsement) (Isaac Borenstein, J.) (Copies to Kevin Mitchell & John Barter) |
| 09/26/2002 | | Habeas corpus for Deft at Cedar Junction MCI (Walpole) for October 28, 2002, at 9:00AM in Middlesex Superior Ct. for Hearing: Motion for New Trial in Judge Isaac Borenstein's session. Requested by: Shirley Cahill, District Attorney's Office ADA: Kevin Mitchell |
| 10/22/2002 | 97.0 | Habeas corpus for Deft at Cedar Junction MCI (Walpole) for December 9, 2002, at 9:00AM in Middlesex Superior Ct. - Cambridge- Judge Borenstein's session  for Hearing: Motion for New Trial.  Special Instructions:Please cancel Habe for 10/28/02, Judge Borenstein. Requested by: Shirley Cahill, District Attorney's Office  ADA: Kevin Mitchell. |
| 10/28/2002 | 98.0 | Motion to continue: Filed |
| 11/13/2002 | 99.0 | Motion for discovery of documents reviewed by Commonwealth witnesses in preparation for testimony and to compel documentary evidence of promises, inducements and rewards: Filed (Copy to Borenstein, J.) |
| 12/06/2002 | | Habeas corpus for witness Robert Sean Reid at Old Colony Correctional Center for Monday, December 9, 2002, at 9:00AM in Middlesex Superior Ct. in Judge Borenstein's session.                 Requested by: Michele Merullo, District Attorney's Office |
| 12/09/2002 | 99.1 | Second Supplemental Memorandum in Support of Post-Conviction Motions |
| 01/06/2003 | 100.0 | Habeas corpus for Deft at Cedar Junction MCI (Walpole) for Wednesday, January 8, 2003, at 9:00AM in Norfolk Superior Ct. for Hearing: Evidentiary Motion in Judge Borenstein's session.      Requested by: |

MA5)*ᴰ-2ᴄᴏ50621

**Commonwealth of Massachusetts**
ESSEX SUPERIOR COURT
**Case Summary**
**Criminal Docket**

09/06/2005
02:40 PM

# ESCR1991-18642
## Commonwealth v Gaskins, Tony B.

| Date | Paper | Text |
|---|---|---|
| | 100.0 | Michele Merullo, District Attorney's Office          ADA: K. M. Mitchell |
| 01/24/2003 | 101.0 | Habeas corpus for Deft at Cedar Junction MCI (Walpole) for Thursday, January 30, 2003 at 9:00AM in Norfolk Superior Ct.  In  Judge Borenstein's session for a Hearing: Evidentiary Motion. Requested by: Michele Merullo, District Attorney's Office ADA: K. M. Mitchell |
| 01/27/2003 | 102.0 | Third supplemental memorandum in support of post-conviction motions: Filed |
| 01/30/2003 | 103.0 | Order authorizing payment of costs of transcripts: Filed |
| 01/30/2003 | 104.0 | Order authorizing payment of costs of transcripts: Filed |
| 02/03/2003 | 105.0 | Motion for issuance of writ of habeas corpus for presence of defendant at hearing: Filed |
| 02/05/2003 | 106.0 | Habeas corpus for Deft at Cedar Junction MCI (Walpole) for February 13, 2003 at 9:00AM in Norfolk Superior Ct.  in Dedham in Ct Rm 3- Judge Borenstein's session for continued Hearing on Motion for New Trial. Requested by: Michele Merullo, District Attorney's Office ADA: K. Mitchell |
| 02/13/2003 | 107.0 | Memorandum of decision and Order on defendant's motion for a new trial: Issued - The defendant's motion for a new trial based on erroneous third prong of malice jury instruction is Denied (Borenstein, J.) Copies sent 2/14/03 |
| 02/20/2003 | 108.0 | Notice of appeal: Filed by Tony B. Gaskins |
| 03/05/2003 | 109.0 | Court Reporter Welch, Maureen is hereby notified to prepare one copy of the transcript of the evidence of December 09-11, 2002 Hearing on Motion for New Trial before Borenstein,J. |
| 06/23/2003 | | Transcript of testimony received 3 volumes from court reporter, Welch, Maureen |
| 03/03/2004 | 110.0 | Motion to provide the defendant access to transcripts of in camera proceedings for purpose of appeal: Filed |
| 03/03/2004 | 111.0 | Motion for status conference and expedited consideration of renewed and revised motion for post conviction relief: Filed |
| 04/21/2004 | 112.0 | Motion to compel court reporter to complete transcripts: Filed |
| 05/05/2004 | | Transcript of testimony received 2 volumes dated 12/10-11/02 from court reporter, Welch, Maureen |
| 06/08/2004 | | Transcript of testimony received 1 volume dated 12/9/02 from court reporter, Welch, Maureen |
| 07/06/2004 | 113.0 | Motion to expedite relief on defendant's motion for new trial pending before this Court: Filed |
| 07/22/2004 | 114.0 | Habeas corpus for Deft at Cedar Junction MCI (Walpole) for 8/3/2004 at 8 AM in Dedham Superior Court (Norfolk county) for Motion for New Trial. |
| 09/27/2004 | 115.0 | Order on motion to provide counsel with access to transcripts of in camera proceedings for purposes of appeal: Issued (Borenstein, J.) |
| 09/27/2004 | 116.0 | Scheduling Order regarding witness Leo Womack: Issued (Borenstein, J.) |

MAS⁻⁵-20050621

**Commonwealth of Massachusetts**
ESSEX SUPERIOR COURT
Case Summary
Criminal Docket

09/06/2005
02:40 PM

### ESCR1991-18642
### Commonwealth v Gaskins, Tony B.

| Date | Paper | Text |
|------|-------|------|
| 01/13/2005 | 117.0 | Transcript of testimony received dated 2/13/03 from court reporter, Leary, Mary |
| 04/15/2005 | 118.0 | Notice of docket entry received from Supreme Judicial Court Re: Motion for leave |
| 04/15/2005 | 119.0 | Notice of docket entry received from Supreme Judicial Court Re: Motion for impoundment |
| 04/15/2005 | 120.0 | Notice of docket entry received from Supreme Judicial Court Re: Judgment |
| 04/21/2005 | 121.0 | Motion for an order permitting Tony B. Gaskins to call attorneys: Denied (Borenstein, J.) |
| 04/25/2005 | 122.0 | General correspondence Re: Leo Womack's Notice of Appeal from from single justice denial of relief: Received from Supreme Judicial Court |
| 08/15/2005 | 123.0 | Motion for a scheduling order and to resume evidentiary proceedings: Filed |

## EVENTS

| Date | Session | Event | Result |
|------|---------|-------|--------|
| 12/08/2000 | CtRm 1 (Salem) | Hearing: Motion | Event held as scheduled |
| 12/14/2000 | CtRm 1 (Salem) | Conference: Status Review | Event held as scheduled |
| 06/14/2001 | CtRm 1 (Salem) | Hearing: Post-Sentence Motion for New Trial. | |
| 09/06/2002 | CtRm 1 (Salem) | Conference: Status Review | Event canceled not re-scheduled |
| | | To be held before Borenstein J. , Counsel Only, at the Dedham Superior Court at 9:00 A.M. | |
| 10/28/2002 | CtRm 1 (Salem) | Hearing: Motion | Event rescheduled by court prior to date |
| 12/09/2002 | CtRm 1 (Salem) | Hearing: Motion | Event held as scheduled |
| 01/08/2003 | CtRm 1 (Salem) | Hearing: Misc Matters | Event not held--joint request |
| | | to be heard in Norfolk Superior Ct. - the Hon. Judge Isaac Borenstein's session. | |
| 01/30/2003 | CtRm 1 (Salem) | Hearing: Motion | Event not held--joint request |
| | | Evidentiary motion to be heard in Norfolk Superior Ct. in Judge Borenstein's session. | |
| 02/13/2003 | CtRm 1 (Salem) | Hearing: Motion | Event held as scheduled |
| 08/03/2004 | CtRm 1 (Salem) | Hearing: Motion New Trial Motion | |

A00078